UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:

JENNIFER McKINNEY AND
ISRAEL McKINNEY

Debtors.

Case No. 22-11558
Chapter 13
Hon. Rachel M Blise

---

**UNITED STATES' EX PARTE MOTION TO FREEZE EXEMPT RETIREMENT ACCOUNTS AND SET HEARING ON WHETHER TO LIFT STAY FOR IRS LEVY**

---

The United States of America, on behalf of the Internal Revenue Service (IRS), hereby moves *ex parte* under 11 U.S.C. §§ 105(a) and 362(d) and (f),[1] and Bankruptcy Rule 4001(a)(2) (which expressly contemplates *ex parte* relief when cause is shown), for an order freezing and prohibiting the Debtors Jennifer and Israel McKinney from withdrawing funds from their Individual Retirement Accounts ("IRAs") at Pershing LLC, or any other accounts traceable thereto, and (2) setting a hearing, with notice to the Debtors and an opportunity to be heard, on the United States' motion to lift the automatic stay to permit the IRS to levy the IRAs. A proposed order is submitted herewith that would enjoin the Debtors from withdrawing and enjoin Pershing LLC from permitting the withdrawal of the funds pending further order of this Court.

---

[1] All references to "Section" or "§" are to the Bankruptcy Code, title 11 of the U.S. Code. "I.R.C." refers to the Internal Revenue Code (26 U.S.C.).

1

## FACTS

1. Debtors Israel McKinney and Jennifer McKinney filed the present Chapter 13 case on September 27, 2022.

### April 2022 Ch. 13

2. The Debtors filed the present Ch. 13 case on the heels of a prior Ch. 13 case, filed by Ms. McKinney alone on April 27, 2022 (case no. 22-10661)("April Ch. 13"), which was dismissed on September 20, 2022, under the eligibility requirements of §109(e) applicable when that case was filed. (22-10661, ECF No. 45)

3. Prior to the dismissal of the case, the Ch. 13 Trustee filed two motions to dismiss the case for failing to make plan payments (22-10661, ECF No. 25 & No. 33).

4. Ms. McKinney has significant tax liability, totaling $1,408,232.46 ($1,033,490.33 secured pursuant to I.R.C. §§ 6321 and 6323), as evidenced by the IRS's amended proof of claim No. 3-3 in Case No. 22-10661.[2]  The IRS acknowledges that the secured amount was overstated based on value of collateral and was preparing to amend the claim to reduce the secured amount.  However, in reducing the secured claim, two additional tax years – 2018 and 2019 – become priority unsecured tax claims.[3]  The Debtors new plan posits the secured IRS claim at

---

[2] A copy of the IRS amended claim No. 3-3 in Case No. 22-10661 is attached as Exhibit 1. The claim mistakenly lists "right of setoff" as the basis for secured status but, in fact, it was based on duly filed Notices of Federal Tax Lien, as admitted in the Debtor's Schedule D.

[3] 2019 is within the 3-year lookback period for the current petition and 2018 is within that lookback based on tolling from the prior bankruptcy case under the hanging paragraph at the end of § 507(a)(8), after subparagraph (G).

$533,484.82 (ECF No. 37 at page 3.) The Court may assume for purposes of this motion that the secured amount is only what the debtor alleged. But with 2018 and 2019 treated as a priority unsecured claim, the total priority claim that must also be paid through a plan is now approximately $546,000.

5. In the April Ch. 13, Ms. McKinney reported net monthly income of $32,480, expenses of $16,555, and a monthly Ch. 13 Plan payment of $15,815 (22-10661, ECF No 30, pg. 1).

6. Between filing for Ch. 13 on April 27, 2022, and the case's dismissal on September 20, for failing to meet the eligibility requirements as of the date of her petition, Ms. McKinney owed four plan payments for $63,260, though Ms. McKinney only paid the Trustee, $38,326.92, leaving a shortfall of $24,933.08. This does not include any payment for the first month after the petition.

7. Ms. McKinney calculated her net income figure by preparing a "Business Income and Expenses" form which listed a gross monthly income of $54,434.00 and monthly business expenses of $19,530. Monthly expenses included a $8,400 payment to the IRS for "(future taxes)." (22-10661, ECF No. 17, pg. 46).

8. The IRS has not received any estimated tax payment on behalf of the McKinney's. *See* Declaration of Nathan Baney ¶5. Therefore, in addition to the shortfall that she was supposed to pay the Trustee, Ms. McKinney has also kept an additional $42,000 she represented to the Court she was paying the IRS ($8,400 x 5 months), for a total windfall of $64,933.

2011 Case

9. The April Ch. 13 was not the Debtors' first experience with bankruptcy courts: on December 13, 2011, the Debtors filed a Ch. 7 bankruptcy in the District of Minnesota, case no. 11-61215.

10. On May 24, 2012, the Ch. 7 Trustee filed an Adversary Proceeding objecting to the discharge of Mr. and Mrs. McKinney pursuant to §§727(a)(2), (a)(3), and (a)(4).[4] ("Dischargeability Complaint")

11. The Minnesota Trustee alleged that the Debtors "transferred, removed, destroyed, mutilated, or concealed property of the estate including transferring cash from bank accounts to insiders and failed to disclose assets. *See* Dischargeability Complaint ¶¶ 11-12, 14.

12. Additionally, the Minnesota Trustee alleged that Debtor Jennifer McKinney manipulated the Debtors' income by turning off the ads on her website/domain to manipulate and lower ad revenue, and "then "turned back on ads" after the bankruptcy petition was filed. Dischargeability Complaint ¶ 15.

13. The Debtors settled with the Trustee and agreed to voluntarily waive their discharge via application to the Court on October 8, 2012. (a copy of the Application is attached as Exhibit 4)

14. On October 10, 2012, the Bankruptcy Court for the District of Minnesota entered an Order approving the waiver of discharge and barring the McKinneys from

---

[4] A copy of that Adversary Proceeding is attached as Exhibit 3.

4

filing another bankruptcy petition within one year from the date of the order. (A copy of the Order is attached as Exhibit 5)

## Filings In Current Case

15. The most valuable estate assets are the Debtors' SEP[5] accounts at Pershing, LLC. The debtors' disclosed "2 accounts – total value of $186,000." (ECF No. 34, pg 8) The accounts were claimed as exempt in the earlier Chapter 13 case but are not listed as exempt this time. Debtors also report five vehicles worth over $139,000, a Ice House Trailer worth $25,000, and a home valued at $450,000 that they improperly attempt to discount by 9% for costs of sale subject to a mortgage of $307,000. (Zillow values the property at $499,400.) The schedules list a number of smaller value items and $2,000 in cash and almost $10,000 in non-retirement investment accounts.

16. On October 10, 2022, Ms. McKinney filed a declaration supporting the Motion to Continue the Automatic Stay attesting that her income is "relatively steady over the last couple of years and I anticipate that my income will remain steady over the length of the Chapter 13 plan." (ECF No. 24, ¶¶ 2-3)

---

[5] Simplified Employee Pension" or "SEP" accounts operate under I.R.C. § 408(k). These types of IRAs are property of the bankruptcy estate, subject to exemption. *See In re Diguilio*, 303 B.R. 144, 148 (Bankr. N.D. Ohio 2003) (collecting cases). The Debtors' IRA accounts are not excluded from the bankruptcy estate under § 541(c)(2), as an ERISA-qualified pension would be. *See In re Herbert*, 140 B.R. 174, 176 (Bankr. N.D. Ohio 1992) ("Inasmuch as IRA's are not afforded the same anti-assignation and non-alienation protection as ERISA governed plans, IRA's are not excluded from a Debtor's estate by any federal nonbankruptcy law.")

17. However, on October 13, 2022, the Debtors filed an Opposition to Motion for Relief from Stay, filed by the United States seeking to execute levy on funds being held by the Chapter 13 Trustee from the April Ch. 13, stating that the funds are needed for plan payments "due to a recent reduction in self-employment earnings." (ECF No. 32 ¶ 2)

18. Debtors current schedules I and J report net disposable income of $10,062.98 per month compared with   This reflects a drop from $32,480 in income for Jennifer alone in the old case to joint income of $28,837.97 in the current case, but also represents an increase in joint expenses to $18,774.99 from $16,655.65 for Jennifer alone in the prior case.

19. The Debtors have proposed a ch. 13 plan in which payments step-up over time (from $10,000 for three months $15,000 for third months and $16,845.66 for 54 months) and is exclusively funded with the Debtors' disposable income. (ECF No. 37, pg. 1)  Thus, total proposed plan funding is $984,665.40.  This exceeds the sum of the IRS's secured claim (as valued by Debtors) and priority claim by about $51,000.  Debtors, however, propose to pay the secured IRS claim over 90 months (not 60 months) with 4% interest – 2% less than the current IRS rate. S*ee* §511(b)(applying IRS rate at time of confirmation). That is to presumably enable them to pay the priority claim of the State of Wisconsin, which their schedules list as owed $88,490 for years 2020 and 2021, and administrative expenses.

## ARGUMENT

### Grounds for a Lift of the Stay to Permit IRS to Levy the SEPs

Under § 362(d)(1), "the court shall grant relief from the stay" for a party in interest "for cause, including the lack of adequate protection of an interest in property of such party in interest." Additionally, under § 362(d)(2), relief is mandated with respect to the stay of an act against property if "(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization." The United States easily meets both tests. As for paragraph (2), there is clearly no equity as the SEP have a combined $186,000 in value and is encumbered by tax liens for over $1 million, and the Debtors are unable to use the funds for reorganization as the tax liens prevent the use of the funds to fund a Ch. 13 Plan. Nor does it appear that the Debtors plan to use the SEP funds that way. The Debtors proposed a step-up Ch. 13 plan which uses the Debtors' projected disposable income exclusively to fund the Plan over five years and proposes to pay the IRS its secured claim over 90 months, 2.5 years longer than the applicable commitment period.

As for paragraph (1), even if the Debtors proposed to use the retirement funds (which they do not), there is no way to grant adequate protection for the Debtors' use of the retirement funds. In fact, if they proposed to use the funds, that would trigger the requirement in § 363 to provide adequate protection, which is impossible for cash. There is no substitution for spending cash that is subject to a creditors lien other than replacing it with a lien on an equal amount of case. However, because the Debtor's have valued the SEP money in their computation of the IRS's total secured claim

7

($533,484.82 as noted above), the secured claim would be reduced the any amount recovered by the IRS if the stay is modified to permit the IRS to levy the SEP accounts.

Preliminarily, the merits of tax liens are not at issue in a summary lift-stay proceeding. The government is only required to show a "colorable" claim. *See Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 33-34 (1st Cir. 1994); *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990); *Simon v. JPMorgan Chase Bank*, N.A. (*In re Lebbos*), 455 B.R. 607, 614 (Bankr. E.D. Mich. 2011). In any event, the taxes at issue were self-reported on returns filed by the Debtors.

Federal tax liens encumber all property and rights to property of a debtor, including IRAs. *See* 26 U.S.C. § 6321. The Supreme Court has stated that the language of I.R.C. § 6321, "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have," *United States v. Nat'l Bank of Comm.*, 472 U.S. 713, 719-20 (1985), including debtors' IRAs. *See In re Kohout*, 236 B.R. 365, 368-69 (Bankr. N.D. Ohio 1999). Thus, the federal tax liens that arose on assessment and demand under I.R.C. § 6321 attached to the Debtor's IRAs. And because NFTLs were filed, even if the Debtors were to change their mind and claim the SEP accounts as exempt as they did in their prior Chapter 13 case, exempt assets remain liable for the tax debtors "during or after the case" under § 522(c) and particularly paragraph (2)(B).[6]

---

[6] "[I]t is a fundamental principal of bankruptcy law that valid liens, including tax liens, survive a bankruptcy discharge." *United States v. Toler*, 666 F. Supp. 2d 872, 882 (S.D. Ohio 2009) (*citing In re Jarrett*, 293 B.R. 127, 131 (Bankr. N.D. Ohio 2002)).

8

Lifting the stay will not interfere with the bankruptcy case as "the property at issue is not property of the estate [or will not be once the deadline to object to exemptions passes] and will not be liquidated for the benefit of unsecured creditors, nor is it necessary to fund a Chapter 13 plan." *In re Pansier*, No. 18-22297-BEH, 2019 WL 949898, at *4 (Bankr. E.D. Wis. Feb. 25, 2019), amended on reconsideration in part, No. 18-22297-BEH, 2019 WL 1495100 (Bankr. E.D. Wis. Apr. 3, 2019), *aff'd sub nom. Pansier v. United States*, No. 19-C-537, 2019 WL 7288952 (E.D. Wis. Dec. 30, 2019).

In fact, lifting the stay to permit the IRS to levy may cause the IRS to reconsider its otherwise likely objection to the plan if the amount committed from disposable income is not altered and other details can be worked out since the proposed 90 months to pay the secured claim is shortened by the fact that the IRS will collect $186,000 up front. Moreover, the interest that will otherwise accrue on $186,000 at 6% compounded monthly until month 79 would be close to $80,000; stated otherwise, receiving $186,000 today instead of between 79 and 90 months from today will save almost $80,000 in interest. In fact, if a $533,000 secured claim is reduced by $186,000 to $347,000, that sum amortized over 60 months at 6% compounded monthly would require a monthly payment of $6,708.48. The priority claim of $546,000 would not require postpetition interest and thus would require a monthly payment of $9,100.00. This if the IRS collect the SEP money now, 60 plan payments of $15,808.48 to the IRS would full pay the secured and priority tax claims. That is more than $1,000 less than the debtor's projected disposable income after the first six months as proposed by their plan ($16,845.66 after six months). While that may be a stretch, a 72-month pay out of the

9

secured part of the claim was reduce the secured payment to $5,750.79 and the overall monthly payment to $14,850.79. But if the $186,000 is not collected now, the debtors have no ability to finance a plan in 60 or even 72 months at the current statutory rate of interest to which the IRS is entitled on the secured part of its claim. This would also leave ample remaining disposable income for the state priority tax claim and administration expenses out of the $984,665.40 the debtors propose to pay to the Chapter 13 Trustee.

## Grounds for an *Ex Parte* Freeze of the IRAs

The IRS initially seeks *ex parte* relief in the form of an order freezing the IRAs in order to preserve the value of its collateral until the Court is able to provide a hearing to the Debtors on relief from the stay. This relief is necessary because otherwise the Debtors will remain free to withdraw and transfer funds from the accounts until the motion for relief from stay is acted upon by the Court. Any such transfer would cause irreparable harm to the Internal Revenue Service. The Debtors have a history of playing fast and loose with bankruptcy courts and, as the conflicting statements to this bankruptcy Court highlight, the IRS is concerned that the Debtors will act to evade collection attempts by the IRS.

Under §105(a) the Court has ample power to preserve the status quo while considering a motion to lift the stay. Section 362(f) more pointedly confirms this power. Without a freeze order, the lift-stay motion could be mooted by a withdrawal. The United States maintains that a simple, short-terms freeze while a lift-stay motion is considered, particularly in view of the express provision for *ex parte* relief in Rule

4001(a)(2), is not the kind of injunction that requires an adversary complaint. If the Court disagrees, however, the United States requests that it docket this motion as an adversary complaint and grant the freeze order in that procedural context.

    The Debtors were forced to voluntarily waive their discharge in their 2011 bankruptcy case due to their alleged concealment of assets, concealed transfers, and manipulation of income. In this case, the Debtors have stated that their income is steady for the last several years and will remain steady when trying to extend the automatic stay, but three days later stated that there has been a short term reduction in income in an effort to prevent the United States from executing their pre-petition levy on funds held by the Ch. 13 Trustee. The Debtors seem to be willing to say whatever they deem will be most helpful to whatever ends they are seeking. Both the history of the Debtors in bankruptcy court and the incongruous statements before this Court provide sufficient cause to justify freezing the IRAs to preserve the status quo, pending a determination whether or not this Court will agree to lift the automatic stay.

    The funds held in the account may be readily transferrable and easily liquidated. Thus, any notice provided to the Debtors or their attorney regarding the government's motion to lift the stay could alert the Debtors to the IRS's desire to have the Court lift the stay to permit a levy and prompt them to liquidate the account to evade a levy. The only way to assure payment of the IRS's claim is through preservation of the value in the Debtors' IRAs; accordingly there is sufficient basis for the Court to grant *ex parte* relief freezing the accounts pending further determinations.

Bankruptcy Rule 9013 provides that a motion must be served on interested parties "other than one that may be considered *ex parte*." Bankruptcy Rule 4001(a)(2) expressly contemplates *ex parte* relief from the stay where warranted by a risk of irreparable harm to a creditor. But the United here is not asking for an *ex parte* order immediately authorizing a levy. It is only requesting that the status quo be preserved, based on the Court's authority under § 105(a), until the lift-stay motion may be heard. In this regard, there is no significant harm to the Debtors from a short-term duration freeze of the IRAs. "Due process considerations provide that a party is not entitled to notice of a hearing to freeze assets if sufficient exigent circumstances are present." *In re Int'l Administrative Servs., Inc.*, 211 B.R. 88, 97 (Bankr. M.D. Fla. 1997).

Moreover, the Debtors cannot conceivably be harmed by a mere freeze of the accounts at least (putting off the determination of whether to permit a levy). They are proposing by their own plan to pay the IRS the value of the accounts, albeit over 90 months. Assuming the Court were to deny lifting the stay, then it would be appropriate to freeze the accounts during the entire case given that the IRS would no longer be secured if the money was withdrawn and dissipated. Again, there is no way to provide adequate protection for a lien on pure cash that is not derived from a business account receivable that will be regenerated by more business. The cash here is retirement funds.

In similar circumstances, bankruptcy courts have, on an *ex parte* basis, ordered a freeze on retirement accounts (exempt or not exempt) to which prepetition tax liens have attached, to protect the cash collateral from dissipation pending further proceedings to determine whether the accounts should be levied or otherwise accessed

in satisfaction of tax debts. Such decisions are rarely reported as they are usually short freeze orders. In *In re Resendes*, for instance, the Bankruptcy Court for the District of Massachusetts prohibited the Debtor from liquidating his IRA accounts until the Court could determine a motion to determine the secured status of IRS's claim and whether the IRA was cash collateral for IRS's secured claim (Ex. 6, *Resendes* Order.) And, in *In re North*, the Bankruptcy Court for the Northern District of Ohio entered an Order freezing the Debtor's IRA to prevent the irreparable harm to the IRS by the dissipation of the accounts at issue. (Ex. 7, *North* Order.) The North court held that "prior notice of the ex parte motion and opportunity for hearing in advance entry of the freeze order would enhance the risk sought to be obviated." *See North* Order pg. 2.

Finally, the United States is requesting only a temporary freeze to preserve the status quo, not only to afford the Debtors notice and hearing before the stay is actually lifted but also because it will not be possible for the IRS to serve a levy on Pershing, LLC immediately after an initial order. Upon lifting the stay, the IRS may still need to satisfy some internal procedural steps required before the levy may be served.

## CONCLUSION

For the foregoing reasons, the United States requests *ex parte* relief freezing the IRAs and setting a hearing on the motion to lift the stay to allow the IRS to levy on the Debtors IRAs, by entry of the attached proposed order or one to similar effect.

Dated this 26th day of October, 2022.

                    Respectfully Submitted,

                    TIMOTHY M. O'SHEA
                    United States Attorney

By:

                    */s/ Nathan Baney*
                    NATHAN D. BANEY
                    Va. Bar 75935
                    Trial Attorney, Tax Division
                    U.S. Department of Justice
                    Post Office Box 7238
                    Ben Franklin Station
                    Washington, D.C. 20044
                    Telephone: (202) 307-6560
                    Facsimile: (202) 514-6770
                    Email: Nathan.baney@usdoj.gov

                    */s/Theresa M. Anzivino*
                    Theresa (Esa) M. Anzivino
                    Assistant United States Attorney
                    Western District of Wisconsin
                    222 W. Washington Avenue, Ste 700
                    Madison, WI  53703
                    Phone:  (608) 250-5454
                    theresa.anzivino@usdoj.gov