UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:

JENNIFER McKINNEY AND
ISRAEL McKINNEY

Debtors.

Case No. 22-11558
Chapter 13
Hon. Rachel M Blise

## UNITED STATES' OBJECTION TO DEBTORS' USE OF SALE PROCEEDS TO PURCHASE REPLACEMENT VEHICLE

The United States of America, on behalf of the Internal Revenue Service (IRS), objects to the Debtors' Motion to Approve Sale Vehicle and Use Proceeds to Purchase Replacement Vehicle (Motion). ECF No. 103. In their Motion, the Debtors propose to sell for $7,000 a 2015 Land Rover, which secures, in part, their significant tax liability to IRS. Rather than pay those proceeds to IRS, the Debtors request to use those proceeds (plus an additional $2,290) to buy another car for their older children to use. *Id*. at 1-2. The IRS does not oppose the part of the Motion that proposes to sell the Land Rover; but it asserts that the Debtors should pay the sale proceeds to IRS to reduce its secured claim (and thus the monthly payments required to amortize the secured claim through a plan) instead of purchasing another car.

The Bankruptcy Code permits only reasonable and necessary expenses for dependents. *See* 11 U.S.C. § 1325(b)(2)(A) (disposable income defined as income not reasonably necessary to be expended on debtor or debtor's dependents). In this case, it is not reasonable or necessary for the Debtors to purchase a replacement car.

The bankruptcy schedules list three cars in addition to the 2015 Land Rover the Debtors propose to sell: a 2013 Land Rover, valued at $10,342; a 2018 Lincoln Navigator, valued at $43,460; and a 2020 Jeep Wrangler, valued at $37,606. ECF No. 34 at 4. IRS is the only creditor with liens on each of these four cars. *Id*. As of the date of filing their schedules, October 21, 2022, only one of the Debtors' children was of driving age (being 17 years old). *Id*. at 26. Whether it is a reasonable or necessary expense for the Debtors to have a car designated for their children is itself debatable, but they nonetheless already do have a car available with the three cars remaining after they sell the 2015 Land Rover.[1] Even if one of the other children comes of driving age during the life of the plan, it is hardly justified to have an additional separate car for that child (as opposed to having them share use of a car), particularly when the Debtors owed over $1.4 million to the IRS, of which $533,484.82 was secured (soon to be reduced by a levy on an IRA after 35% withholding for current tax on the withdrawal) and $555,623 was priority. The Debtors' income is not even sufficient to pay the priority claim without interest and amortize the secured claim with interest over 60 months and they are asking the IRS to accept plan that provides for continuing payments on the secured amount after 60 months.

---

[1] IRS acknowledges that the two Land Rovers may have mechanical issues. In December 2022, counsel for the Debtors emailed the undersigned counsel about the McKinneys' intentions to sell the two Land Rovers and purchase replacement vehicles. IRS responded in the beginning of January 2023 that it would not agree to the Debtors purchasing replacement vehicles for the children with the sale proceeds. Upon receiving the Motion, counsel for the United States contacted counsel for the Debtors to inform him of the IRS' anticipated objection. On March 9, 2023, counsel for the Debtors emailed IRS, stating that the Debtors would provide more information about the issues with the Land Rover vehicles. IRS is awaiting that information, but still is proceeding with this objection, given the short response time to the Motion.

The Debtors' schedules, in large part, show that they have accumulated over the years numerous assets—including multiple luxury-type items—while not paying their taxes and mounting an enormous tax liability. Debtors have acknowledged their failure to pay years of tax liabilities and have repeatedly represented that the sole purpose of this bankruptcy case is to rectify their delinquency to the IRS. Selling an asset subject to IRS's lien and seeking to use sale proceeds to purchase a fourth car in lieu of paying down the tax liability seems inconsistent with that purpose. The request to purchase an unnecessary car further underlies concerns the IRS has expressed to the Debtors since the beginning of this case. Those concerns include other unnecessary and unreasonable expenses listed on the schedules, such as $450 a month to pay for Mr. McKinney's mother's mortgage,[2] private school tuition, and an apartment for Ms. McKinney that is advertised as a luxury apartment and costs $2,355 in monthly rent. *Id.* at 28, 30.

Debtors may argue that the IRS should not be concerned because they will propose a plan to pay IRS's secured and priority claims in full. Assuming the Debtors are successful in completing their Chapter 13 plan, the IRS will have to wait years to receive full payment and the government should not be forced to subsidize Debtors' luxury-type lifestyle (including a car for every driving-age child) while it waits for payment, as it has done for the years leading up to the Debtors' bankruptcy. Instead, it is the Debtors who must adjust their spending and lifestyle in return for receiving protection under the Bankruptcy Code and IRS being stayed from its collection efforts.

---

[2] Ms. McKinney testified at the § 341 meeting that the $450 expense listed on Schedule J was for this purpose.

3

Debtors may also argue that the IRS is protected because they are offering the IRS a replacement lien on the car they are seeking to purchase. Section 363 requires, however, that the IRS be in no worse of a position than before sale of its collateral and be adequately protected for the use of its collateral. 11 U.S.C. § 363(p). On its face, a replacement lien on a 2007 Subaru Impreza does not put IRS on equal footing with the lien it currently has on a 2015 Land Rover. On their schedules, the Debtors estimated the value of the 2015 Land Rover to be $13,255. ECF 34 at 4. The sale price of the Subaru Impreza is $9,290, about $4,000 less.[3] ECF No. 103. More to the point, it does not constitute the equivalent of the cash proceeds of the 2015 Land Rover because the 2007 Subaru will further depreciate and not compensate for the time-value of the cash. Therefore, the Debtors' proposed use of IRS's collateral is impermissible when the IRS will not be adequately protected for such use.

WHEREFORE, the IRS asks that the Court deny the Debtors' Motion.

Dated this 10th day of March, 2023.

    Respectfully Submitted,

    TIMOTHY M. O'SHEA
    United States Attorney

    By:

    */s/Theresa M. Anzivino*
    Theresa (Esa) M. Anzivino

---

[3] IRS questions whether the Subaru Impreza's value even equals this amount. After a preliminary internet search, it appears that the Kelly Blue Book value for a 2007 Subaru Impreza could be as low as $6,000, depending on other factors (IRS has requested from the Debtors more information about the vehicle). This lower price both undercuts the value of IRS's lien while also suggesting that the Debtors are overpaying significantly for this replacement car, even if the Court were to grant their Motion.

Assistant United States Attorney
Western District of Wisconsin
222 W. Washington Avenue, Ste 700
Madison, WI  53703
Phone: (608) 264-5158
theresa.anzivino@usdoj.gov