## UNITED STATES BANKRUPTCY COURT FOR
## THE WESTERN DISTRICT OF WISCONSIN

---

In Re:                                    In Bankruptcy No:

**ISRAEL MCKINNEY and**
**JENNIFER MCKINNEY**

     **Debtors.**                          **Case No: 22-11558**

---

## MOTION TO SELL CERTAIN REAL ESTATE FREE AND CLEAR OF ALL LIENS
## PURSUANT TO BANKRUPTCY CODE SECTION 363(b)

---

Israel and Jennifer McKinney, Debtors, by their attorneys PITTMAN & PITTMAN LAW

OFFICES, LLC by Greg P. Pittman hereby moves the Court for an Order to sell certain real estate identified

in the attached enclosures. This sale of the real estate as set forth in the agreement to be sold free and clear

of all liens pursuant to Bankruptcy Code Section 363(b) and Federal Rules of Bankruptcy Procedure 6004.

Enclosed is as follows:

1. Offer to Purchase with all Attachments from Debtors to Peter J. Gauchel and Brenda K.

    Gauchel for $393,500.00 (Exhibit #1).

2. Real Estate Description

    Lot 9 of La Crosse County Certified Survey Map filed on July 11, 1979, in Volume 1 of
    Certified Survey Maps, Page 120, as Document No. 897908, being located on part of the NW
    ¼ of the SE ¼ of Section 35, Township 17 North, Range 7 West, Town of Hamilton, La Crosse
    County, Wisconsin.
    (Tax Parcel #7-1354-1)

3. Title Commitment (Exhibit #2).

4. Mortgages, judgment liens, contracts, tax liens, construction liens, debts and a variety of other

    liens against the property (Exhibit #3).

The proceeds from the sale will be used in the following order:

1. Closing costs relating to the sale of property including title policy, transfer fees, recording fees,

    real estate commissions, surveying costs (if necessary), attorney's fees and disbursements for

Greg P. Pittman (not to exceed $2,000.00) relating to the sale of the property or other necessary and miscellaneous closing costs to complete the transaction.

2. Payment of any delinquent or accrued real estate taxes.

3. The net sale proceeds shall be paid in priority of the liens against the property. Marine Credit Union holds a 1st mortgage on this real estate and Marine Credit Union will be paid in full directly from the closing. It is anticipated that there will be net proceeds from the sale after closing costs, administrative costs and the mortgage to Marine Credit Union is paid. Pursuant to the title commitment issued, the Internal Revenue Service has several tax liens that are in a second position against the real estate. All net proceeds (after administrative, real estate taxes, and Marine Credit Union) are to be paid to the Internal Revenue Service to be applied against the tax liens.

4. Debtors further request a waiver of Federal Rule of Bankruptcy Procedure 6004(h) so that the order approving sale is final and not subject to a 14 day stay so that the Debtors are not subject to any additional interest accrual, real estate tax accrual and the potential for more bank fees. The buyer has proposed the transaction as a "cash" transaction and not subject to a financing contingency. The title commitment was recently issued and the closing date is set on or before July 28, 2023.

**Dated this ___27th___ day of June, 2023 at La Crosse, Wisconsin.**

**PITTMAN & PITTMAN LAW OFFICES, LLC**

**By:**    **s/Greg P. Pittman**_____
**Greg P. Pittman**
**Attorney for Debtors**
**Attorney No: 1073787**
**712 Main Street**
**La Crosse, WI  54601**
**(608) 784-0841**

DigiSign Verified - f1a01db5-6aa5-4d0a-822c-b4d61dbc7ed8

Approved by the Wisconsin Real Estate Examining Board                    **Assist-2-Sell Homes For You Realty**
5-1-22 (Optional Use Date) 7-1-22 (Mandatory Use Date)

## WB-40 AMENDMENT TO OFFER TO PURCHASE

**CAUTION: Use a WB-40 Amendment if both Parties will be agreeing to modify the terms of the Offer.
Use a WB-41 Notice if a Party is giving a Notice which does not require the other Party's agreement.**

1  Buyer and Seller agree to amend the Offer dated ___May 31, 2023___ , and accepted on ___June 7, 2023___ ,
2  for the purchase and sale of real estate at W5441 Innsbruck Rd, West Salem
3  _____ , Wisconsin as follows:
4  Closing date is changed from _____ , _____ , to _____ , _____ .
5  Purchase price is changed from $ 395,000.00 _____ to $ 393,500.00 _____ .
6  Other: As a result of home inspection and radon test findings, buyer requests $1,500 price
7  reduction and will assume responsibility for remaining repairs.  Home inspection and
8  radon test contingencies will be deemed as satisfied upon acceptance of this amendment.
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 _____
31 The attached _____ is/are made part of this Amendment.
32 ALL OTHER TERMS OF THE OFFER TO PURCHASE AND ANY PRIOR AMENDMENTS REMAIN THE SAME.
33 This Amendment is binding upon Seller and Buyer only if a copy of the accepted Amendment is delivered to the Party
34 offering the Amendment on or before _____ (Time is of the Essence). Delivery
35 of the accepted Amendment may be made in any manner specified in the Offer to Purchase, unless otherwise provided
36 in this Amendment.
37 **NOTE: The Party offering this Amendment may withdraw the offered Amendment prior to acceptance and**
38 **delivery as provided at lines 33-34.**

39 This Amendment was drafted by __Beth Pendleton, Assist-2-Sell Homes For You LLC__ on 06/21/2023
40 _____ Licensee and Firm ▲ _____ Date ▲
41 This Amendment was presented by **Hannah Cuda, eXp Realty** on 06/24/2023
42 _____ Licensee and Firm ▲ _____ Date ▲
43 (x) *Peter J Gauchel*        06/21/2023              (x) *Jennifer Howe-Sauls McKinney*      06/26/2023
44 Buyer's Signature ▲         Date ▲              Seller's Signature ▲                  Date ▲
45 Print name ▶ Peter J Gauchel               Print name Jennifer Howe-Sauls McKinney
46 (x) *Brenda K Gauchel*       06/21/2023              (x) *Israel Ryan McKinney*             06/24/2023
47 Buyer's Signature ▲         Date ▲              Seller's Signature ▲                  Date ▲
48 Print name ▶ Brenda K Gauchel               Print name ▶ Israel Ryan McKinney
49 This Amendment was rejected
50 _____ Party Initials ▲ _____ Date ▲

Exhibit #1

Assist-2-Sell Homes For You Realty, 841 W. Wisconsin St. Sparta WI 54656                    608.269.5229        Fax: 608.269.5251        Innsbruck
Beth Pendleton                    Produced with zipForm® by zipLogix 180...026   www.zipLogix.com

DigiSign Verified: F57315E9-5B19-41E2-97AA-1292E90362B

Approved by the Wisconsin Real Estate Examining Board
8-1-20 (Optional Use Date) 9-1-20 (Mandatory Use Date)

Assist-2-Sell Homes For You Realty
Page 1 of 10, WB-11

## WB-11 RESIDENTIAL OFFER TO PURCHASE

1 **LICENSEE DRAFTING THIS OFFER ON** _____ May 31, 2023 _____ **[DATE] IS (AGENT OF BUYER)**
2 (AGENT OF SELLER/LISTING FIRM) (AGENT OF BUYER AND SELLER) STRIKE THOSE NOT APPLICABLE
3 The Buyer, _____ Peter J Gauchel, Brenda K Gauchel _____
4 offers to purchase the Property known as [Street Address] _____ W5441 Innsbruck Rd _____
5 _____
6 in the _____ town _____ of _____ Hamilton _____ , County
7 of _____ La Crosse _____ Wisconsin (insert additional description, if any, at lines 543-551 or
8 in an addendum per line 573), on the following terms:
9 **PURCHASE PRICE** The purchase price is **Three Hundred Fifty Thousand** _____
10 _____ Dollars ($350,000.00 _____ ).
11 **INCLUDED IN PURCHASE PRICE** Included in purchase price is the Property, all Fixtures on the Property as of the date
12 stated on line 1 of this Offer (unless excluded at lines 20-23), and the following additional items: oven/range,
13 dishwasher, refrigerator, microwave, washer & dryer in mud room, deck furniture
14 _____
15 _____
16 _____
17 **NOTE: The terms of this Offer, not the listing contract or marketing materials, determine what items are included**
18 **or not included.**
19 **NOT INCLUDED IN PURCHASE PRICE** Not included in purchase price is Seller's personal property (unless included at
20 lines 12-16) and the following: sauna, 1 or 2 washers, 1 or 2 dryers
21 _____
22 _____
23 _____
24 **CAUTION: Identify Fixtures that are on the Property (see lines 26-36) to be excluded by Seller or that are rented**
25 **(e.g., water softeners or other water treatment systems, LP tanks, etc.) and will continue to be owned by the lessor.**
26 "Fixture" is defined as an item of property which is physically attached to or so closely associated with land, buildings or
27 improvements so as to be treated as part of the real estate, including, without limitation, physically attached items not easily
28 removable without damage to the premises, items specifically adapted to the premises and items customarily treated as
29 fixtures, including, but not limited to, all: garden bulbs; plants; shrubs and trees; screen and storm doors and windows;
30 electric lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central heating and cooling units
31 and attached equipment; water heaters, water softeners and treatment systems; sump pumps; attached or fitted floor
32 coverings; awnings; attached antennas and satellite dishes (but not the component parts); audio/visual wall mounting
33 brackets (but not the audio/visual equipment); garage door openers and remote controls; installed security systems; central
34 vacuum systems and accessories; in-ground sprinkler systems and component parts; built-in appliances; ceiling fans;
35 fences; in-ground pet containment systems, including receiver components; storage buildings on permanent foundations
36 and docks/piers on permanent foundations.
37 **CAUTION: Exclude any Fixtures to be retained by Seller or which are rented (e.g., water softeners or other water**
38 **treatment systems, LP tanks, etc.) on lines 20-23 or at lines 543-551 or in an addendum per line 573).**
39 **BINDING ACCEPTANCE** This Offer is binding upon both Parties only if a copy of the accepted Offer is delivered to Buyer
40 on or before _____ June 5, 2023 _____ . Seller may keep the
41 Property on the market and accept secondary offers after binding acceptance of this Offer.
42 **CAUTION: This Offer may be withdrawn prior to delivery of the accepted Offer.**
43 **ACCEPTANCE** Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical
44 copies of the Offer.
45 **CAUTION: Deadlines in the Offer are commonly calculated from acceptance. Consider whether short term**
46 **Deadlines running from acceptance provide adequate time for both binding acceptance and performance.**
47 **CLOSING** This transaction is to be closed on _____ no later than July 10, 2023 _____
48 _____ at the place selected by Seller,
49 unless otherwise agreed by the Parties in writing. If the date for closing falls on Saturday, Sunday, or a federal or a state
50 holiday, the closing date shall be the next Business Day.
51 **CAUTION: To reduce the risk of wire transfer fraud, any wiring instructions received should be independently**
52 **verified by phone or in person with the title company, financial institution, or entity directing the transfer. The real**
53 **estate licensees in this transaction are not responsible for the transmission or forwarding of any wiring or money**
54 **transfer instructions.**

Property Address: **W5441 Innsbruck Rd, West Salem, WI** _____ Page 2 of 10, WB-11

55 **EARNEST MONEY**
56 ■ EARNEST MONEY of $ _____ accompanies this Offer.
57 If Offer was drafted by a licensee, receipt of the earnest money accompanying this Offer is acknowledged.
58 ■ EARNEST MONEY of $ **5,000.00** _____ will be mailed, or commercially, electronically
59 or personally delivered within _____ days ("5" if left blank) after acceptance.
60 All earnest money shall be delivered to and held by (listing Firm) (drafting Firm) (other identified as
61 _____ ) STRIKE THOSE NOT APPLICABLE
62 (listing Firm if none chosen; if no listing Firm, then drafting Firm; if no Firm then Seller).
63 **CAUTION: If a Firm does not hold earnest money, an escrow agreement should be drafted by the Parties or an**
64 **attorney as lines 67-87 do not apply. If someone other than Buyer pays earnest money, consider a special**
65 **disbursement agreement.**
66 ■ THE BALANCE OF PURCHASE PRICE will be paid in cash or equivalent at closing unless otherwise agreed in writing.
67 ■ **DISBURSEMENT OF EARNEST MONEY HELD BY A FIRM**: If negotiations do not result in an accepted offer and the
68 earnest money is held by a Firm, the earnest money shall be promptly disbursed (after clearance from payer's depository
69 institution if earnest money is paid by check) to the person(s) who paid the earnest money. At closing, earnest money shall
70 be disbursed according to the closing statement. If this Offer does not close, the earnest money shall be disbursed according
71 to a written disbursement agreement signed by all Parties to this Offer. If said disbursement agreement has not been
72 delivered to the Firm holding the earnest money within 60 days after the date set for closing, that Firm may disburse the
73 earnest money: (1) as directed by an attorney who has reviewed the transaction and does not represent Buyer or Seller;
74 (2) into a court hearing a lawsuit involving the earnest money and all Parties to this Offer; (3) as directed by court order; (4)
75 upon authorization granted within this Offer; or (5) any other disbursement required or allowed by law. The Firm may retain
76 legal services to direct disbursement per (1) or to file an interpleader action per (2) and the Firm may deduct from the
77 earnest money any costs and reasonable attorneys' fees, not to exceed $250, prior to disbursement.
78 ■ **LEGAL RIGHTS/ACTION**: The Firm's disbursement of earnest money does not determine the legal rights of the Parties
79 in relation to this Offer. Buyer's or Seller's legal right to earnest money cannot be determined by the Firm holding the earnest
80 money. At least 30 days prior to disbursement per (1), (4) or (5) above, where the Firm has knowledge that either Party
81 disagrees with the disbursement, the Firm shall send Buyer and Seller written notice of the intent to disburse by certified
82 mail. If Buyer or Seller disagrees with the Firm's proposed disbursement, a lawsuit may be filed to obtain a court order
83 regarding disbursement. Small Claims Court has jurisdiction over all earnest money disputes arising out of the sale of
84 residential property with one-to-four dwelling units. Buyer and Seller should consider consulting attorneys regarding their
85 legal rights under this Offer in case of a dispute. Both Parties agree to hold the Firm harmless from any liability for good
86 faith disbursement of earnest money in accordance with this Offer or applicable Department of Safety and Professional
87 Services regulations concerning earnest money. See Wis. Admin. Code Ch. REEB 18.
88 **TIME IS OF THE ESSENCE** "Time is of the Essence" as to: (1) earnest money payment(s); (2) binding acceptance; (3)
89 occupancy; (4) date of closing; (5) contingency Deadlines STRIKE AS APPLICABLE and all other dates and Deadlines in
90 this Offer except:_____
91 _____. If "Time is of the Essence" applies to a date or Deadline,
92 failure to perform by the exact date or Deadline is a breach of contract. If "Time is of the Essence" does not apply to a date
93 or Deadline, then performance within a reasonable time of the date or Deadline is allowed before a breach occurs.
94 **REAL ESTATE CONDITION REPORT** Wisconsin law requires owners of property that includes one-to-four dwelling units
95 to provide Buyers with a Real Estate Condition Report. Excluded from this requirement are sales of property that has never
96 been inhabited, sales exempt from the real estate transfer fee, and sales by certain court-appointed fiduciaries, (for example,
97 personal representatives who have never occupied the Property). The form of the Report is found in Wis. Stat. § 709.03.
98 The law provides: "§ 709.02 Disclosure . . . the owner of the property shall furnish, not later than 10 days after acceptance
99 of the contract of sale . . ., to the prospective Buyer of the property a completed copy of the report . . . A prospective Buyer
100 who does not receive a report within the 10 days may, within two business days after the end of that 10-day period, rescind
101 the contract of sale . . . by delivering a written notice of rescission to the owner or the owner's agent." Buyer may also have
102 certain rescission rights if a Real Estate Condition Report disclosing defects is furnished before expiration of the 10 days,
103 but after the Offer is submitted to Seller. Buyer should review the report form or consult with an attorney for additional
104 information regarding rescission rights.
105 **PROPERTY CONDITION REPRESENTATIONS** Seller represents to Buyer that as of the date of acceptance Seller has
106 no notice or knowledge of Conditions Affecting the Property or Transaction (lines 112-177) other than those identified in
107 Seller's Real Estate Condition Report dated **May 30, 2023**, which was received by Buyer prior to Buyer signing
108 this Offer and which is made a part of this Offer by reference COMPLETE DATE OR STRIKE AS APPLICABLE and
109 _____
110 _____
111 _____ INSERT CONDITIONS NOT ALREADY INCLUDED IN THE CONDITION REPORT
112 "Conditions Affecting the Property or Transaction" are defined to include:
113 a. Defects in the roof, basement or foundation (including cracks, seepage and bulges), electrical system, or part of the
114 plumbing system (including the water heater, water softener and swimming pool); or basement, window, or plumbing leaks;

DigiSign Verified: F57315E9-5B19-41E2-97...

115 overflow from sinks, bathtubs, or sewers; or other water or moisture intrusions or conditions.

116 b.   Defects in heating and air conditioning system (including the air filters and humidifiers); in a wood burning stove or
117 fireplace; or caused by a fire in a stove or fireplace or elsewhere on the Property.

118 c.   Defects related to smoke detectors or carbon monoxide detectors, or a violation of applicable state or local smoke
119 detector or carbon monoxide detector laws.

120 d.   Defects in any structure, or mechanical equipment included as Fixtures or personal property.

121 e.   Rented items located on the Property such as a water softener or other water conditioner system.

122 f.   Defects caused by unsafe concentrations of, or unsafe conditions on the Property relating to radon, radium in water
123 supplies, lead in paint, soil or water supplies, unsafe levels of mold, asbestos or asbestos-containing materials or other
124 potentially hazardous or toxic substances on the Property; manufacture of methamphetamine or other hazardous or toxic
125 substances on the Property; or high voltage electric (100 KV or greater) or steel natural gas transmission lines located on
126 but not directly serving the Property.

127 **NOTE: Specific federal lead paint disclosure requirements must be complied with in the sale of most residential**
128 **properties built before 1978.**

129 g.   Defects caused by unsafe concentrations of, unsafe conditions relating to, or the storage of, hazardous or toxic
130 substances on neighboring properties.

131 h.   Property is served by a joint well; Defects related to a joint well serving the Property; or Defects in a well on the
132 Property or in a well that serves the Property, including unsafe well water.

133 i.   A septic system or other private sanitary disposal system serves the Property; Defects in the septic system or other
134 sanitary disposal system on the Property; or any out-of-service septic system serving the Property not closed or abandoned
135 according to applicable regulations.

136 j.   Underground or aboveground fuel storage tanks on or previously located on the Property; or Defects in the underground
137 or aboveground fuel storage tanks on or previously located on the Property. (The owner, by law, may have to register the
138 tanks with the Department of Agriculture, Trade and Consumer Protection at P.O. Box 8911, Madison, Wisconsin, 53708,
139 whether the tanks are in use or not. Department regulations may require closure or removal of unused tanks.)

140 k.   "LP" tank on the Property (specify in the additional information whether the tank is owned or leased); or Defects in an
141 "LP" tank on the Property.

142 l.   Notice of property tax increases, other than normal annual increases, or pending Property reassessment; remodeling
143 that may increase the Property's assessed value; pending special assessments; or Property is within a special purpose
144 district, such as a drainage district, that has authority to impose assessments.

145 m.   Proposed construction of a public project that may affect use of the Property; Property additions or remodeling affecting
146 Property structure or mechanical systems during Seller's ownership without required permits; or any land division involving
147 the Property without required state or local permits.

148 n.   The Property is part of or subject to a subdivision homeowners' association; or the Property is not a condominium unit
149 and there are common areas associated with the Property that are co-owned with others.

150 o.   Any zoning code violations with respect to the Property; the Property or any portion thereof is located in a floodplain,
151 wetland or shoreland zoning area; or the Property is subject to a shoreland mitigation plan required by Wisconsin
152 Department of Natural Resources (DNR) rules that obligates the Property owner to establish or maintain certain measures
153 related to shoreland conditions, enforceable by the county.

154 p.   Nonconforming uses of the Property; conservation easements, restrictive covenants or deed restrictions on the
155 Property; or, other than public rights of way, nonowners having rights to use part of the Property, including, but not limited
156 to, private rights-of-way and easements other than recorded utility easements.

157 q.   All or part of the Property has been assessed as agricultural land; has been assessed a use-value assessment
158 conversion charge; or payment of a use-value assessment conversion charge has been deferred.

159 r.   All or part of the Property is subject to, enrolled in, or in violation of a farmland preservation agreement, Forest Crop
160 Law, Managed Forest Law, the Conservation Reserve Program, or a comparable program.

161 s.   A dam is totally or partially located on the Property; or an ownership interest in a dam not located on the Property will
162 be transferred with the Property because the dam is owned by a homeowners' association, lake district, or similar group of
163 which the Property owner is a member.

164 t.   No legal access to the Property; or boundary or lot line disputes, encroachments or encumbrances (including a joint
165 driveway) affecting the Property.

166 u.   Federal, state, or local regulations requiring repairs, alterations or corrections of an existing condition; or any insurance
167 claims relating to damage to the Property within the last five years.

168 v.   A pier attached to the Property not in compliance with state or local pier regulations; a written agreement affecting
169 riparian rights related to the Property; or the bed of the abutting navigable waterway is owned by a hydroelectric operator.

170 w.   Current or previous termite, powder-post beetle or carpenter ant infestations or Defects caused by animal, reptile, or
171 other insect infestations.

172 x.   Structure on the Property designated as an historic building; all or any part of the Property in an historic district; or one
173 or more burial sites on the Property.

174 y.   Agreements binding subsequent owners such as a lease agreement or extension of credit from an electric cooperative.

175 z.   Owner is a foreign person as defined in the Foreign Investment in Real Property Tax Act in 26 IRC § 1445(f).

DigiSign Verified: F57315E9-5B19-41E2-97...

Property Address: **W5441 Innsbruck Rd, West Salem, WI** _____ Page 4 of 10, WB-11

176 aa. Other Defects affecting the Property, including, without limitation, drainage easement or grading problems; or
177 excessive sliding, settling, earth movement or upheavals.

178 **INSPECTIONS AND TESTING** Buyer may only conduct inspections or tests if specific contingencies are included as a
179 part of this Offer. An "inspection" is defined as an observation of the Property, which does not include an appraisal or testing
180 of the Property, other than testing for leaking carbon monoxide, or testing for leaking LP gas or natural gas used as a fuel
181 source, which are hereby authorized. A "test" is defined as the taking of samples of materials such as soils, water, air or
182 building materials from the Property for laboratory or other analysis of these materials. Seller agrees to allow Buyer's
183 inspectors, testers and appraisers reasonable access to the Property upon advance notice, if necessary, to satisfy the
184 contingencies in this Offer. Buyer or licensees or both may be present at all inspections and testing. Except as otherwise
185 provided, Seller's authorization for inspections does not authorize Buyer to conduct testing of the Property.
186 **NOTE: Any contingency authorizing testing should specify the areas of the Property to be tested, the purpose of**
187 **the test (e.g., to determine if environmental contamination is present), any limitations on Buyer's testing and any**
188 **other material terms of the contingency.**
189 Buyer agrees to promptly restore the Property to its original condition after Buyer's inspections and testing are completed
190 unless otherwise agreed to with Seller. Buyer agrees to promptly provide copies of all inspection and testing reports to
191 Seller. Seller acknowledges that certain inspections or tests may detect environmental pollution which may be required to
192 be reported to the Wisconsin Department of Natural Resources.
193 [ X ] **INSPECTION CONTINGENCY:** This contingency only authorizes inspections, not testing (see lines 178-192).
194 (1) This Offer is contingent upon a Wisconsin registered or Wisconsin licensed home inspector performing a home inspection
195      of the Property after the date on line 1 of this Offer that discloses no Defects.
196 (2) This Offer is further contingent upon a qualified independent inspector or independent qualified third party performing an
197      inspection of _____
198 _____ (list any Property component(s)
199      to be separately inspected, e.g., swimming pool, roof, foundation, chimney, etc.) which discloses no Defects.
200 (3) Buyer may make follow-up inspections recommended in a written report resulting from an authorized inspection, provided
201      they occur prior to the Deadline specified at line 206. Inspection(s) shall be performed by a qualified
202      inspector or independent qualified third party.
203 Buyer shall order the inspection(s) and be responsible for all costs of inspection(s).
204 **CAUTION: Buyer should provide sufficient time for the home inspection and/or any specialized inspection(s), as**
205 **well as any follow-up inspection(s).**
206 This contingency shall be deemed satisfied unless Buyer, within ___*___ days ("15" if left blank) after acceptance, delivers
207 to Seller a copy of the written inspection report(s) dated after the date on line 1 of this Offer and a written notice listing the
208 Defect(s) identified in those report(s) to which Buyer objects (Notice of Defects).
209 **CAUTION: A proposed amendment is not a Notice of Defects and will not satisfy this notice requirement.**
210 For the purposes of this contingency, Defects do not include structural, mechanical or other conditions the nature and extent
211 of which Buyer had actual knowledge or written notice before signing this Offer.
212 **NOTE: "Defect" as defined on lines 445-447 means a condition that would have a significant adverse effect on the**
213 **value of the Property; that would significantly impair the health or safety of future occupants of the Property; or**
214 **that if not repaired, removed or replaced would significantly shorten or adversely affect the expected normal life**
215 **of the premises.**
216 ■ **RIGHT TO CURE:** Seller (shall)(shall not) **STRIKE ONE** ("shall" if neither is stricken) have the right to cure the Defects.
217 If Seller has the right to cure, Seller may satisfy this contingency by:
218 (1) delivering written notice to Buyer within _____ ("10" if left blank) days after Buyer's delivery of the Notice of Defects
219      stating Seller's election to cure Defects;
220 (2) curing the Defects in a good and workmanlike manner; and
221 (3) delivering to Buyer a written report detailing the work done no later than three days prior to closing.
222 This Offer shall be null and void if Buyer makes timely delivery of the Notice of Defects and written inspection report(s) and:
223 (1) Seller does not have the right to cure; or
224 (2) Seller has the right to cure but:
225      (a) Seller delivers written notice that Seller will not cure; or
226      (b) Seller does not timely deliver the written notice of election to cure.
227 [ X ] **RADON TESTING CONTINGENCY:** This Offer is contingent upon Buyer obtaining a current written report of the
228 results of a radon test at the Property performed by a qualified third party in a manner consistent with applicable
229 Environmental Protection Agency (EPA) and Wisconsin Department of Health Services (DHS) protocols and standards
230 indicating an EPA average radon level of less than 4.0 picoCuries per liter (pCi/L), at (Buyer's) (Seller's) **STRIKE ONE**
231 ("Buyer's" if neither is stricken) expense.
232 This contingency shall be deemed satisfied unless Buyer, within ___*___ days ("20" if left blank) after acceptance delivers
233 to Seller a written copy of the radon test results indicating a radon level of 4.0 pCi or higher and written notice objecting to
234 the radon level in the report.

DigiSign Verified: F57315E9-5B19-41E2-97...

Property Address: **W5441 Innsbruck Rd, West Salem, WI** _____ Page 5 of 10, WB-11

235 ■ **RIGHT TO CURE:** Seller (shall)(shall not) [STRIKE ONE] ("shall" if neither is stricken) have the right to cure.
236 If Seller has the right to cure, Seller may satisfy this contingency by:
237    (1) delivering a written notice of Seller's election to cure within 10 days after delivery of Buyer's notice; and,
238    (2) installing a radon mitigation system in conformance with EPA standards in a good and workmanlike manner and by
239     giving Buyer a report of the work done and a post remediation test report indicating a radon level of less than 4.0 pCi/L
240     pCi/L no later than three days prior to closing.
241 This Offer shall be null and void if Buyer timely delivers the above written notice and report to Seller and:
242    (1) Seller does not have the right to cure; or
243    (2) Seller has the right to cure but:
244     (a) Seller delivers written notice that Seller will not cure; or
245     (b) Seller does not timely deliver the notice of election to cure.
246 **NOTE: For radon information refer to the EPA at epa.gov/radon or the DHS at dhs.wisconsin.gov/radon.**

247                **IF LINE 248 IS NOT MARKED OR IS MARKED N/A LINES 296-307 APPLY.**
248 [   ] **FINANCING COMMITMENT CONTINGENCY:** This Offer is contingent upon Buyer being able to obtain a written
249 _____ [loan type or specific lender, if any] first mortgage loan commitment as described
250 below, within _____ days after acceptance of this Offer. The financing selected shall be in an amount of not less than
251 $_____ for a term of not less than _____ years, amortized over not less than _____ years. Initial
252 monthly payments of principal and interest shall not exceed $_____ . Buyer acknowledges that lender's
253 required monthly payments may also include 1/12th of the estimated net annual real estate taxes, hazard insurance
254 premiums, and private mortgage insurance premiums. The mortgage shall not include a prepayment premium. Buyer agrees
255 to pay discount points in an amount not to exceed _____ % ("0" if left blank) of the loan. If Buyer is using multiple loan
256 sources or obtaining a construction loan or land contract financing, describe at lines 543-551 or in an addendum attached
257 per line 573. Buyer agrees to pay all customary loan and closing costs, wire fees, and loan origination fees, to promptly
258 apply for a mortgage loan, and to provide evidence of application promptly upon request of Seller. Seller agrees to allow
259 lender's appraiser access to the Property.
260 ■ **LOAN AMOUNT ADJUSTMENT:** If the purchase price under this Offer is modified, any financed amount, unless otherwise
261 provided, shall be adjusted to the same percentage of the purchase price as in this contingency and the monthly payments
262 shall be adjusted as necessary to maintain the term and amortization stated above.
263 **CHECK AND COMPLETE APPLICABLE FINANCING PROVISION AT LINE 264 or 265.**
264   ☐ **FIXED RATE FINANCING:** The annual rate of interest shall not exceed _____%.
265   ☐ **ADJUSTABLE RATE FINANCING:** The initial interest rate shall not exceed _____%. The initial interest rate
266 shall be fixed for _____ months, at which time the interest rate may be increased not more than _____% ("2" if
267 left blank) at the first adjustment and by not more than _____% ("1" if left blank) at each subsequent adjustment.
268 The maximum interest rate during the mortgage term shall not exceed the initial interest rate plus _____% ("6" if
269 left blank). Monthly payments of principal and interest may be adjusted to reflect interest changes.
270 ■ **SATISFACTION OF FINANCING COMMITMENT CONTINGENCY:** If Buyer qualifies for the loan described in this Offer
271 or another loan acceptable to Buyer, Buyer agrees to deliver to Seller a copy of a written loan commitment.
272 This contingency shall be satisfied if, after Buyer's review, Buyer delivers to Seller a copy of a written loan commitment
273 (even if subject to conditions) that is:
274    (1) signed by Buyer; or
275    (2) accompanied by Buyer's written direction for delivery.
276 Delivery of a loan commitment by Buyer's lender or delivery accompanied by a notice of unacceptability shall not satisfy
277 this contingency.
278 **CAUTION: The delivered loan commitment may contain conditions Buyer must yet satisfy to obligate the lender to**
279 **provide the loan. Buyer understands delivery of a loan commitment removes the Financing Commitment**
280 **Contingency from the Offer and shifts the risk to Buyer if the loan is not funded.**
281 ■ **SELLER TERMINATION RIGHTS:** If Buyer does not deliver a loan commitment on or before the Deadline on line 250.
282 Seller may terminate this Offer if Seller delivers a written notice of termination to Buyer prior to Seller's Actual Receipt of
283 written loan commitment from Buyer.
284 ■ **FINANCING COMMITMENT UNAVAILABILITY:** If a financing commitment is not available on the terms stated in this
285 Offer (and Buyer has not already delivered an acceptable loan commitment for other financing to Seller), Buyer shall
286 promptly deliver written notice to Seller of same including copies of lender(s)' rejection letter(s) or other evidence of
287 unavailability.
288 [   ] **SELLER FINANCING:** Seller shall have 10 days after the earlier of:
289    (1) Buyer delivery of written notice of evidence of unavailability as noted in lines 284-287; or
290    (2) the Deadline for delivery of the loan commitment set on line 250
291 to deliver to Buyer written notice of Seller's decision to finance this transaction with a note and mortgage under the same
292 terms set forth in this Offer, and this Offer shall remain in full force and effect, with the time for closing extended accordingly.
293 If Seller's notice is not timely given, the option for Seller to provide financing shall be considered waived. Buyer agrees to
294 cooperate with and authorizes Seller to obtain any credit information reasonably appropriate to determine Buyer's credit
295 worthiness for Seller financing.

DigiSign Verified: F57315E9-5B19-41E2-97...

Property Address: W5441 Innsbruck Rd, West Salem, WI                                                           Page 6 of 10, WB-11

296 **IF THIS OFFER IS NOT CONTINGENT ON FINANCING COMMITMENT** Within _____ days ("7" if left blank) after
297 acceptance, Buyer shall deliver to Seller either:
298    (1)  reasonable written verification from a financial institution or third party in control of Buyer's funds that Buyer has, at
299         the time of verification, sufficient funds to close; or
300    (2) _____
301    _____ [Specify documentation Buyer agrees to deliver to Seller].
302 If such written verification or documentation is not delivered, Seller has the right to terminate this Offer by delivering written
303 notice to Buyer prior to Seller's Actual Receipt of a copy of Buyer's written verification. Buyer may or may not obtain
304 mortgage financing but does not need the protection of a financing commitment contingency. Seller agrees to allow Buyer's
305 appraiser access to the Property for purposes of an appraisal. Buyer understands and agrees that this Offer is not subject
306 to the appraisal meeting any particular value, unless this Offer is subject to an appraisal contingency, nor does the right of
307 access for an appraisal constitute a financing commitment contingency.
308 [    ] **APPRAISAL CONTINGENCY:** This Offer is contingent upon Buyer or Buyer's lender having the Property appraised
309 at Buyer's expense by a Wisconsin licensed or certified independent appraiser who issues an appraisal report dated
310 subsequent to the date stated on line 1 of this Offer, indicating an appraised value for the Property equal to or greater than
311 the agreed upon purchase price.
312 This contingency shall be deemed satisfied unless Buyer, within _____ days after acceptance, delivers to Seller a copy
313 of the appraisal report indicating an appraised value less than the agreed upon purchase price, and a written notice objecting
314 to the appraised value.
315 ▪ **RIGHT TO CURE:** Seller (shall)(shall not) **STRIKE ONE** ("shall" if neither is stricken) have the right to cure.
316 If Seller has the right to cure, Seller may satisfy this contingency by delivering written notice to Buyer adjusting the purchase
317 price to the value shown on the appraisal report within _____ days ("5" if left blank) after Buyer's delivery of the appraisal
318 report and the notice objecting to the appraised value. Seller and Buyer agree to promptly execute an amendment initiated
319 by either Party after delivery of Seller's notice, solely to reflect the adjusted purchase price.
320 This Offer shall be null and void if Buyer makes timely delivery of the notice objecting to appraised value and the written
321 appraisal report and:
322    (1)  Seller does not have the right to cure; or
323    (2)  Seller has the right to cure but:
324         (a) Seller delivers written notice that Seller will not adjust the purchase price; or
325         (b) Seller does not timely deliver the written notice adjusting the purchase price to the value shown on the appraisal
326             report.
327 **NOTE: An executed FHA, VA or USDA Amendatory clause may supersede this contingency.**
328 [    ] **CLOSING OF BUYER'S PROPERTY CONTINGENCY:** This Offer is contingent upon the closing of the sale of
329 Buyer's property located at _____
330 no later than _____ (the Deadline). If closing does not occur by the Deadline, this
331 Offer shall become null and void unless Buyer delivers to Seller, on or before the Deadline, reasonable written verification
332 from a financial institution or third party in control of Buyer's funds that Buyer has, at the time of verification, sufficient funds
333 to close or proof of bridge loan financing, along with a written notice waiving this contingency. Delivery of verification or
334 proof of bridge loan shall not extend the closing date for this Offer.
335 [    ] **BUMP CLAUSE:** If Seller accepts a bona fide secondary offer, Seller may give written notice to Buyer that another
336 offer has been accepted. If Buyer does not deliver to Seller the documentation listed below within _____ hours ("72" if
337 left blank) after Buyer's Actual Receipt of said notice, this Offer shall be null and void. Buyer must deliver the following:
338    (1)  Written waiver of the Closing of Buyer's Property Contingency if line 328 is marked;
339    (2)  Written waiver of _____
340    _____ (name other contingencies, if any); and
341    (3)  Any of the following checked below:
342         [    ] Proof of bridge loan financing.
343         [    ] Proof of ability to close from a financial institution or third party in control of Buyer's funds which shall provide
344               Seller with reasonable written verification that Buyer has, at the time of verification, sufficient funds to close.
345 Other: _____
346 _____
347 [Insert other requirements, if any (e.g., payment of additional earnest money, etc.)]
348 [    ] **SECONDARY OFFER:** This Offer is secondary to a prior accepted offer. This Offer shall become primary upon
349 delivery of written notice to Buyer that this Offer is primary. Unless otherwise provided, Seller is not obligated to give Buyer
350 notice prior to any Deadline, nor is any particular secondary buyer given the right to be made primary ahead of other
351 secondary buyers. Buyer may declare this Offer null and void by delivering written notice of withdrawal to Seller prior to
352 Seller's notice that this Offer is primary. Buyer may not deliver notice of withdrawal earlier than _____ days ("7"
353 if left blank) after acceptance of this Offer. All other Offer Deadlines that run from acceptance shall run from the time this
354 Offer becomes primary.
355 **HOMEOWNERS ASSOCIATION** If this Property is subject to a homeowners association, Buyer is aware the Property may
356 be subject to periodic association fees after closing and one-time fees resulting from transfer of the Property. Any one-time

DigiSign Verified: F57315E9-5B19-41E2-97AE-0AE9509C8508

Property Address: **W5441 Innsbruck Rd, West Salem, WI**                                    Page 7 of 10, WB-11

357 fees resulting from transfer of the Property shall be paid at closing by (Seller) (Buyer) **STRIKE ONE** ("Buyer" if neither is
358 stricken).

359 **CLOSING PRORATIONS** The following items, if applicable, shall be prorated at closing, based upon date of closing values:
360 real estate taxes, rents, prepaid insurance (if assumed), private and municipal charges, property owners or homeowners
361 association assessments, fuel and _____
362 _____
363 **CAUTION: Provide basis for utility charges, fuel or other prorations if date of closing value will not be used.**
364 Any income, taxes or expenses shall accrue to Seller, and be prorated at closing, through the day prior to closing.
365 Real estate taxes shall be prorated at closing based on **CHECK BOX FOR APPLICABLE PRORATION FORMULA**:
366     **X**     The net general real estate taxes for the preceding year, or the current year if available (Net general real estate
367             taxes are defined as general property taxes after state tax credits and lottery credits are deducted). NOTE: THIS CHOICE
368             APPLIES IF NO BOX IS CHECKED.
369             Current assessment times current mill rate (current means as of the date of closing).
370             Sale price, multiplied by the municipality area-wide percent of fair market value used by the assessor in the prior
371             year, or current year if known, multiplied by current mill rate (current means as of the date of closing).
372 _____
373 **CAUTION: Buyer is informed that the actual real estate taxes for the year of closing and subsequent years may be**
374 **substantially different than the amount used for proration especially in transactions involving new construction,**
375 **extensive rehabilitation, remodeling or area-wide re-assessment. Buyer is encouraged to contact the local**
376 **assessor regarding possible tax changes.**
377             Buyer and Seller agree to re-prorate the real estate taxes, through the day prior to closing based upon the taxes on
378             the actual tax bill for the year of closing, with Buyer and Seller each owing his or her pro-rata share. Buyer shall, within 5
379             days of receipt, forward a copy of the bill to the forwarding address Seller agrees to provide at closing. The Parties shall
380             re-prorate within 30 days of Buyer's receipt of the actual tax bill. Buyer and Seller agree this is a post-closing obligation
381             and is the responsibility of the Parties to complete, not the responsibility of the real estate Firms in this transaction.
382 **TITLE EVIDENCE**
383 ■ **CONVEYANCE OF TITLE: Upon payment of the purchase price, Seller shall convey the Property by warranty deed**
384 **(trustee's deed if Seller is a trust, personal representative's deed if Seller is an estate or other conveyance as**
385 **provided herein),** free and clear of all liens and encumbrances, except: municipal and zoning ordinances and agreements
386 entered under them, recorded easements for the distribution of utility and municipal services, recorded building and use
387 restrictions and covenants, present uses of the Property in violation of the foregoing disclosed in Seller's Real Estate
388 Condition Report and in this Offer, general taxes levied in the year of closing and _____
389 _____
390 _____ (insert other allowable exceptions from title, if any)
391 that constitutes merchantable title for purposes of this transaction. Seller, at Seller's cost, shall complete and execute the
392 documents necessary to record the conveyance and pay the Wisconsin Real Estate Transfer Fee.
393 **WARNING: Municipal and zoning ordinances, recorded building and use restrictions, covenants and easements**
394 **may prohibit certain improvements or uses and therefore should be reviewed, particularly if Buyer contemplates**
395 **making improvements to Property or a use other than the current use.**
396 ■ **TITLE EVIDENCE:** Seller shall give evidence of title in the form of an owner's policy of title insurance in the amount of
397 the purchase price on a current ALTA form issued by an insurer licensed to write title insurance in Wisconsin. Seller shall
398 pay all costs of providing title evidence to Buyer. Buyer shall pay the costs of providing the title evidence required by Buyer's
399 lender and recording the deed or other conveyance.
400 ■ **GAP ENDORSEMENT:** Seller shall provide a "gap" endorsement or equivalent gap coverage at (Seller's)(Buyer's)
401 **STRIKE ONE** ("Seller's" if neither stricken) cost to provide coverage for any liens or encumbrances first filed or recorded
402 after the commitment date of the title insurance commitment and before the deed is recorded, subject to the title insurance
403 policy conditions, exclusions and exceptions, provided the title company will issue the coverage. If a gap endorsement or
404 equivalent gap coverage is not available, Buyer may give written notice that title is not acceptable for closing (see lines 410-
405 415).
406 ■ **DELIVERY OF MERCHANTABLE TITLE:** The required title insurance commitment shall be delivered to Buyer's attorney
407 or Buyer not less than 5 business days before closing, showing title to the Property as of a date no more than 15 days
408 before delivery of such title evidence to be merchantable per lines 383-391, subject only to liens that will be paid out of the
409 proceeds of closing and standard title insurance requirements and exceptions.
410 ■ **TITLE NOT ACCEPTABLE FOR CLOSING:** If title is not acceptable for closing, Buyer shall notify Seller in writing of
411 objections to title by the time set for closing. Seller shall have a reasonable time, but not exceeding 15 days, to remove the
412 objections, and the time for closing shall be extended as necessary for this purpose. If Seller is unable to remove said
413 objections, Buyer shall have five days from receipt of notice thereof, to deliver written notice waiving the objections, and the
414 time for closing shall be extended accordingly. If Buyer does not waive the objections, this Offer shall be null and void.
415 Providing title evidence acceptable for closing does not extinguish Seller's obligations to give merchantable title to Buyer.
416 ■ **SPECIAL ASSESSMENTS/OTHER EXPENSES:** Special assessments, if any, levied or for work actually commenced
417 prior to the date stated on line 1 of this Offer shall be paid by Seller no later than closing. All other special assessments

DigiSign Verified: F57315E9-5B19-41E2-97??..??8

Property Address: **W5441 Innsbruck Rd, West Salem, WI**                                    Page 8 of 10, WB-11

418 shall be paid by Buyer. "Levied" means the local municipal governing body has adopted and published a final resolution
419 describing the planned improvements and the assessment of benefits.
420 **CAUTION: Consider a special agreement if area assessments, property owners association assessments, special**
421 **charges for current services under Wis. Stat. § 66.0627 or other expenses are contemplated. "Other expenses" are**
422 **one-time charges or ongoing use fees for public improvements (other than those resulting in special assessments)**
423 **relating to curb, gutter, street, sidewalk, municipal water, sanitary and storm water and storm sewer (including all**
424 **sewer mains and hook-up/connection and interceptor charges), parks, street lighting and street trees, and impact**
425 **fees for other public facilities, as defined in Wis. Stat. § 66.0617(1)(f).**
426 **LEASED PROPERTY** If Property is currently leased and lease(s) extend beyond closing, Seller shall assign Seller's rights
427 under said lease(s) and transfer all security deposits and prepaid rents thereunder to Buyer at closing. The terms of the
428 (written) (oral) **STRIKE ONE** lease(s), if any, are _____
429 _____
430 _____ . Insert additional terms, if any, at lines 543-551 or attach as an addendum per line 573.
431 **DEFINITIONS**
432 ■ **ACTUAL RECEIPT:** "Actual Receipt" means that a Party, not the Party's recipient for delivery, if any, has the document
433 or written notice physically in the Party's possession, regardless of the method of delivery. If the document or written notice
434 is electronically delivered, Actual Receipt shall occur when the Party opens the electronic transmission.
435 ■ **BUSINESS DAY:** "Business Day" means a calendar day other than Saturday, Sunday, any legal public holiday under
436 Wisconsin or Federal law, and any other day designated by the President such that the postal service does not receive
437 registered mail or make regular deliveries on that day.
438 ■ **DEADLINES:** "Deadlines" expressed as a number of "days" from an event, such as acceptance, are calculated by
439 excluding the day the event occurred and by counting subsequent calendar days. The Deadline expires at Midnight on the
440 last day. Additionally, Deadlines expressed as a specific number of Business Days are calculated in the same manner
441 except that only Business Days are counted while other days are excluded. Deadlines expressed as a specific number of
442 "hours" from the occurrence of an event, such as receipt of a notice, are calculated from the exact time of the event, and by
443 counting 24 hours per calendar day. Deadlines expressed as a specific day of the calendar year or as the day of a specific
444 event, such as closing, expire at Midnight of that day. "Midnight" is defined as 11:59 p.m. Central Time.
445 ■ **DEFECT:** "Defect" means a condition that would have a significant adverse effect on the value of the Property; that would
446 significantly impair the health or safety of future occupants of the Property; or that if not repaired, removed or replaced would
447 significantly shorten or adversely affect the expected normal life of the premises.
448 ■ **FIRM:** "Firm" means a licensed sole proprietor broker or a licensed broker business entity.
449 ■ **PARTY:** "Party" means the Buyer or the Seller; "Parties" refers to both Buyer and Seller.
450 ■ **PROPERTY:** Unless otherwise stated, "Property" means the real estate described at lines 4-8.
451 **INCLUSION OF OPTIONAL PROVISIONS** Terms of this Offer that are preceded by an OPEN BOX ( [ ] ) are part of
452 this offer ONLY if the box is marked such as with an "X". They are not part of this offer if marked "N/A" or are left blank.
453 **PROPERTY DIMENSIONS AND SURVEYS** Buyer acknowledges that any land, building or room dimensions, or total
454 acreage or building square footage figures, provided to Buyer by Seller or by a Firm or its agents, may be approximate
455 because of rounding, formulas used or other reasons, unless verified by survey or other means.
456 **CAUTION: Buyer should verify total square footage formula, total square footage/acreage figures, and land,**
457 **building or room dimensions, if material.**
458 **DISTRIBUTION OF INFORMATION** Buyer and Seller authorize the agents of Buyer and Seller to: (i) distribute copies of
459 the Offer to Buyer's lender, appraisers, title insurance companies and any other settlement service providers for the
460 transaction as defined by the Real Estate Settlement Procedures Act (RESPA); (ii) report sales and financing concession
461 data to multiple listing service sold databases; (iii) provide active listing, pending sale, closed sale and financing concession
462 information and data, and related information regarding seller contributions, incentives or assistance, and third party gifts,
463 to appraisers researching comparable sales, market conditions and listings, upon inquiry; and (iv) distribute copies of this
464 Offer to the seller, or seller's agent, of another property that Seller intends on purchasing.
465 **MAINTENANCE** Seller shall maintain the Property and all personal property included in the purchase price until the earlier
466 of closing or Buyer's occupancy, in materially the same condition it was in as of the date on line 1 of this Offer, except for
467 ordinary wear and tear and changes agreed upon by Parties.
468 **PROPERTY DAMAGE BETWEEN ACCEPTANCE AND CLOSING** If, prior to closing, the Property is damaged in an
469 amount not more than five percent of the purchase price, other than normal wear and tear, Seller shall promptly notify Buyer
470 in writing, and will be obligated to restore the Property to materially the same condition it was in as of the date on line 1 of
471 this Offer. Seller shall provide Buyer with copies of all required permits and lien waivers for the lienable repairs no later than
472 closing. If the amount of damage exceeds five percent of the purchase price, Seller shall promptly notify Buyer in writing of
473 the damage and this Offer may be terminated at option of Buyer. Should Buyer elect to carry out this Offer despite such
474 damage, Buyer shall be entitled to the insurance proceeds, if any, relating to the damage to the Property, plus a credit
475 towards the purchase price equal to the amount of Seller's deductible on such policy, if any. However, if this sale is financed
476 by a land contract or a mortgage to Seller, any insurance proceeds shall be held in trust for the sole purpose of restoring

DigiSign Verified: F57315E9-5B19-41E2-97~~Main Document~~8   Page 12 of 33

Property Address: **W5441 Innsbruck Rd, West Salem, WI**                                                                Page 9 of 10, WB-11

477 the Property.

478 **BUYER'S PRE-CLOSING WALK-THROUGH** Within three days prior to closing, at a reasonable time pre-approved by
479 Seller or Seller's agent, Buyer shall have the right to walk through the Property to determine that there has been no
480 significant change in the condition of the Property, except for ordinary wear and tear and changes agreed upon by Parties,
481 and that any defects Seller has agreed to cure have been repaired in the manner agreed to by the Parties.

482 **OCCUPANCY** Occupancy of the entire Property shall be given to Buyer at time of closing unless otherwise provided in
483 this Offer at lines 543-551 or in an addendum attached per line 573, or lines 426-430 if the Property is leased. At time of
484 Buyer's occupancy, Property shall be in broom swept condition and free of all debris, refuse, and personal property except
485 for personal property belonging to current tenants, or sold to Buyer or left with Buyer's consent. Occupancy shall be given
486 subject to tenant's rights, if any.

487 **DEFAULT** Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and
488 conditions of this Offer. A material failure to perform any obligation under this Offer is a default that may subject the defaulting
489 party to liability for damages or other legal remedies.

490   If Buyer defaults, Seller may:
491   (1) sue for specific performance and request the earnest money as partial payment of the purchase price; or
492   (2) terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) sue for actual
493       damages.
494   If Seller defaults, Buyer may:
495   (1) sue for specific performance; or
496   (2) terminate the Offer and request the return of the earnest money, sue for actual damages, or both.

497 In addition, the Parties may seek any other remedies available in law or equity. The Parties understand that the availability
498 of any judicial remedy will depend upon the circumstances of the situation and the discretion of the courts. If either Party
499 defaults, the Parties may renegotiate the Offer or seek nonjudicial dispute resolution instead of the remedies outlined above.
500 By agreeing to binding arbitration, the Parties may lose the right to litigate in a court of law those disputes covered by the
501 arbitration agreement.

502 **NOTE: IF ACCEPTED, THIS OFFER CAN CREATE A LEGALLY ENFORCEABLE CONTRACT. BOTH PARTIES**
503 **SHOULD READ THIS DOCUMENT CAREFULLY. THE FIRM AND ITS AGENTS MAY PROVIDE A GENERAL**
504 **EXPLANATION OF THE PROVISIONS OF THE OFFER BUT ARE PROHIBITED BY LAW FROM GIVING ADVICE OR**
505 **OPINIONS CONCERNING YOUR LEGAL RIGHTS UNDER THIS OFFER OR HOW TITLE SHOULD BE TAKEN AT**
506 **CLOSING. AN ATTORNEY SHOULD BE CONSULTED IF LEGAL ADVICE IS NEEDED.**

507 **ENTIRE CONTRACT** This Offer, including any amendments to it, contains the entire agreement of the Buyer and Seller
508 regarding the transaction. All prior negotiations and discussions have been merged into this Offer. This agreement binds
509 and inures to the benefit of the Parties to this Offer and their successors in interest.

510 **NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and persons
511 registered with the registry by contacting the Wisconsin Department of Corrections on the Internet at http://www.doc.wi.gov
512 or by telephone at (608) 240-5830.

513 **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA)** Section 1445 of the Internal Revenue Code (IRC)
514 provides that a transferee (Buyer) of a United States real property interest must pay or withhold as a tax up to 15% of the
515 total "Amount Realized" in the sale if the transferor (Seller) is a "Foreign Person" and no exception from FIRPTA withholding
516 applies. A "Foreign Person" is a nonresident alien individual, foreign corporation, foreign partnership, foreign trust, or foreign
517 estate. The "Amount Realized" is the sum of the cash paid, the fair market value of other property transferred, and the
518 amount of any liability assumed by Buyer.

519 **CAUTION: Under this law if Seller is a Foreign Person, and Buyer does not pay or withhold the tax amount, Buyer**
520 **may be held directly liable by the U.S. Internal Revenue Service for the unpaid tax and a tax lien may be placed**
521 **upon the Property.**

522 Seller hereby represents that Seller is a non-Foreign Person, unless (1) Seller represents Seller is a Foreign Person in a
523 condition report incorporated in this Offer per lines 105-108, or (2) no later than 10 days after acceptance, Seller delivers
524 notice to Buyer that Seller is a Foreign Person, in which cases the provisions on lines 530-532 apply.

525 **IF SELLER IS A NON-FOREIGN PERSON.** Seller shall, no later than closing, execute and deliver to Buyer, or a qualified
526 substitute (attorney or title company as stated in IRC § 1445), a sworn certification under penalties of perjury of Seller's
527 non-foreign status in accordance with IRC § 1445. If Seller fails to timely deliver certification of Seller's non-foreign status,
528 Buyer shall: (1) withhold the amount required to be withheld pursuant to IRC § 1445; or, (2) declare Seller in default of this
529 Offer and proceed under lines 494-501.

530 **IF SELLER IS A FOREIGN PERSON.** If Seller has represented that Seller is a Foreign Person, Buyer shall withhold the
531 amount required to be withheld pursuant to IRC § 1445 at closing unless the Parties have amended this Offer regarding
532 amounts to be withheld, any withholding exemption to be applied, or other resolution of this provision.

533 **COMPLIANCE WITH FIRPTA.** Buyer and Seller shall complete, execute, and deliver, on or before closing, any instrument,
534 affidavit, or statement needed to comply with FIRPTA, including withholding forms. If withholding is required under IRC §
535 1445, and the net proceeds due Seller are not sufficient to satisfy the withholding required in this transaction, Seller shall

Property Address: **W5441 Innsbruck Rd, West Salem, WI** _____ Page 10 of 10, WB-11

536 deliver to Buyer, at closing, the additional funds necessary to satisfy the applicable withholding requirement. Seller also
537 shall pay to Buyer an amount not to exceed $1,000 for actual costs associated with the filing and administration of forms,
538 affidavits, and certificates necessary for FIRPTA withholding and any withholding agent fees.
539 **Any representations made by Seller with respect to FIRPTA shall survive the closing and delivery of the deed.**
540 Firms, Agents, and Title Companies are not responsible for determining FIRPTA status or whether any FIRPTA exemption
541 applies. The Parties are advised to consult with their respective independent legal counsel and tax advisors regarding
542 FIRPTA.

543 | ADDITIONAL PROVISIONS/CONTINGENCIES |
544 **- This is a cash offer.**
545 **- Offer contingent upon court approval. Inspection deadlines shall be calculated from**
546 **court approval date.**
547 **- Language on line 484 shall be strictly adhered to. Sellers shall have all debris &**
548 **personal property removed no later than 7 days prior to closing. Buyer shall have right to**
549 **pre-closing walk-through 7 days prior to closing. Any debris/refuse/personal property**
550 **remaining at that time shall be removed via third-party company at seller expense.**
551 _____

552 | DELIVERY OF DOCUMENTS AND WRITTEN NOTICES | Unless otherwise stated in this Offer, delivery of documents and
553 written notices to a Party shall be effective only when accomplished by one of the authorized methods specified at lines
554 555-570.
555 (1) Personal: giving the document or written notice personally to the Party, or the Party's recipient for delivery if named at
556 line 557 or 558.
557 Name of Seller's recipient for delivery, if any: _____
558 Name of Buyer's recipient for delivery, if any: _____
559 [    ] (2) Fax: fax transmission of the document or written notice to the following number:
560 Seller: (_____) _____ Buyer: (_____) _____
561 [    ] (3) Commercial: depositing the document or written notice, fees prepaid or charged to an account, with a
562 commercial delivery service, addressed either to the Party, or to the Party's recipient for delivery, for delivery to the Party's
563 address at line 566 or 567.
564 [    ] (4) U.S. Mail: depositing the document or written notice, postage prepaid, in the U.S. Mail, addressed either to the
565 Party, or to the Party's recipient for delivery, for delivery to the Party's address.
566 Address for Seller: _____
567 Address for Buyer: _____
568 [ X ] (5) Email: electronically transmitting the document or written notice to the email address.
569 Email Address for Seller: **hannah.cuda@exprealty.com**
570 Email Address for Buyer: **bpendleton@assist2sell.com**

571 | PERSONAL DELIVERY/ACTUAL RECEIPT | Personal delivery to, or Actual Receipt by, any named Buyer or Seller
572 constitutes personal delivery to, or Actual Receipt by, all Buyers or Sellers.
573 [ X ] ADDENDA: The attached _____ **RECR, B, Escalation Clause** _____ is/are made part of this Offer.
574 This Offer was drafted by [Licensee and Firm] _____ **Beth Pendleton, Assist2Sell Homes For You LLC**

575 (x) _____                                          5/31/23
576 Buyer's Signature ▲ Print Name Here ▶ **Peter J Gauchel**                          Date ▲
                                                                06/01/2023
577 (x) _____
578 Buyer's Signature ▲ Print Name Here ▶ **Brenda K Gauchel**                          Date ▲

579 **SELLER ACCEPTS THIS OFFER. THE WARRANTIES, REPRESENTATIONS AND COVENANTS MADE IN THIS**
580 **OFFER SURVIVE CLOSING AND THE CONVEYANCE OF THE PROPERTY. SELLER AGREES TO CONVEY THE**
581 **PROPERTY ON THE TERMS AND CONDITIONS AS SET FORTH HEREIN AND ACKNOWLEDGES RECEIPT OF A**
582 **COPY OF THIS OFFER.**

583 (x) _____
584 Seller's Signature ▲ Print Name Here ▶                                          Date ▲

585 (x) _____
586 Seller's Signature ▲ Print Name Here ▶                                          Date ▲
                                              Hannah Cuda, eXp Realty
587 This Offer was presented to Seller by [Licensee and Firm] _____

588 _____ on _06-05-2023 9:12 AM PDT_____ at _____ a.m./p.m.
589 This Offer is rejected _____ This Offer is countered [See attached counter] _____    06-05-2023
590                  Seller Initials ▲  Date ▲                                  Seller Initials ▲  Date ▲

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.ziplogix.com    Innsbruck

DigiSign Verified: cBFD45GF4912320-4E8A-9718-ACA3DBF093CF

Approved by Wisconsin Real Estate Examining Board                    **Assist-2-Sell Homes For You Realty**
5-1-22(Optional Use Date) 7-1-22 (Mandatory Use Date)

## WB-44 COUNTER-OFFER

### Counter-Offer No. ___2___ by (Buyer/Seller) STRIKE ONE

**NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.**

1  The Offer to Purchase dated 05/31/2023 and signed by Buyer Peter J Gauchel, Brenda K Gauchel
2  _____ for purchase of real estate at W5441 Innsbruck Rd, West Salem, WI
3  _____ is rejected and the following Counter-Offer is hereby made.
4  **CAUTION: This Counter-Offer does not include the terms or conditions in any other counter-offer or multiple**
5  **counter-proposal unless incorporated by reference.**
6  All terms and conditions remain the same as stated in the Offer to Purchase except the following: _____
7  _____
8  1. Purchase price to be $390,000.  This is best & final price.
9  _____
10  2. Offer contingent upon court approval. Inspection deadlines to be calculated from the
11  date of a fully executed offer to purchase.
12  _____
13  3. Closing to occur no later than July 28th, 2023.
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____
26  _____
27  _____
28  The attached _____ is/are made part of this Counter-Offer.
29  Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
30  This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
31  making the Counter-Offer on or before _____ June 8, 2023 _____ (Time is of
32  the Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase,
33  unless otherwise provided in this Counter-Offer.
34  **NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as**
35  **provided at lines 30-32.**

36  This Counter-Offer was drafted by Beth Pendleton, Assist-2-Sell Homes For You, LLC on  06/06/2023
37                                          Licensee and Firm ▲                                          Date ▲

38  (x) Peter J Gauchel                06/06/2023          (x) _____
39  Buyer's Signature ▲                  Date ▲           Seller's Signature ▲                  Date ▲
40  Print name ▶ Peter J Gauchel                          Print name ▶

41  (x) Brenda K Gauchel               06/06/2023          (x) _____
42  Buyer's Signature ▲                  Date ▲           Seller's Signature ▲                  Date ▲
43  Print name ▶ Brenda K Gauchel        Hannah Cuda, eXp Realty    Print name ▶

44  This Counter-Offer was presented by _____ on  06-07-2023
45                                          Licensee and Firm ▲                                          Date ▲

46  This Counter-Offer is (rejected) (countered) STRIKE ONE (Party's Initials) _HSM_ _JRM_

47  **NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or**
48  **incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-**
49  **Offer by specifying the number of the provision or the lines containing the provision. In transactions involving**
50  **more than one Counter-Offer, the Counter-Offer referred to should be clearly specified.**

Assist-2-Sell Homes For You Realty, 841 W. Wisconsin St. Sparta WI 54656        Phone: 608.269.5229        Fax: 608.269.5259        Innsbruck
Beth Pendleton                          Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Approved by Wisconsin Real Estate Examining Board
5-1-22(Optional Use Date) 7-1-22 (Mandatory Use Date)

eXp Realty

## WB-44 COUNTER-OFFER

Counter-Offer No. __3__ by (Buyer/Seller) [STRIKE ONE]

NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.

1 The Offer to Purchase dated 05/31/2023 and signed by Buyer Peter J Gauchel, Brenda K Gauchel
2 _____ for purchase of real estate at W5441 Innsbruck Rd, West Salem, WI  54669
3 _____ is rejected and the following Counter-Offer is hereby made.
4 **CAUTION: This Counter-Offer does not include the terms or conditions in any other counter-offer or multiple**
5 **counter-proposal unless incorporated by reference.**
6 All terms and conditions remain the same as stated in the Offer to Purchase except the following: _____
7 1. Purchase price to be $395,000
8
9 2. Offer contingent upon court approval. Inspection deadlines to be calculated from the
10 date of a fully executed offer to purchase.
11
12 3. Closing to occur no later than July 28th, 2023.
13-27 _____
28 The attached _____ is/are made part of this Counter-Offer.
29 Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
30 This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
31 making the Counter-Offer on or before June 8, 2023 _____ (Time is of
32 the Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase,
33 unless otherwise provided in this Counter-Offer.
34 **NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as**
35 **provided at lines 30-32.**
36 This Counter-Offer was drafted by Hannah Cuda eXp Realty on 06/07/2023
37 Licensee and Firm ▲   Date ▲
38 (x) Peter J Gauchel   06/07/2023   (x) Israel Ryan McKinney   06/07/2023
39 Buyer's Signature ▲   Date ▲   Seller's Signature ▲   Date ▲
40 Print name ▶ Peter J Gauchel   Print name ▶ Israel Mckinney
41 (x) Brenda K Gauchel   06/07/2023   (x) Jennifer Howe Souly McK 06/07/2023
42 Buyer's Signature ▲   Date ▲   Seller's Signature ▲   Date ▲
43 Print name ▶ Brenda K Gauchel   Print name ▶ Jennifer Mckinney   Assist-2-Sell
44 This Counter-Offer was presented by Beth Pendleton   on 06/07/2023
45 Licensee and Firm ▲   Date ▲
46 This Counter-Offer is (rejected) (countered) [STRIKE ONE] (Party's Initials)
47 **NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or**
48 **incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-**
49 **Offer by specifying the number of the provision or the lines containing the provision. In transactions involving**
50 **more than one Counter-Offer, the Counter-Offer referred to should be clearly specified.**

eXp Realty, P.O. Box #1343 LaCrosse WI 54602    Phone: 5074583743    Fax:    Jennifer and Israel
Hannah Cuda    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# CHICAGO TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE
### ISSUED BY
### CHICAGO TITLE INSURANCE COMPANY

### NOTICE

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, Chicago Title Insurance Company, a Florida Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

### COMMITMENT CONDITIONS

1.  **DEFINITIONS**
    (a)  "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
    (b)  "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
    (c)  "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
    (d)  "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
    (e)  "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
    (f)  "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

---

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**ALTA Commitment for Title Insurance 8-1-16**





 **CHICAGO TITLE INSURANCE COMPANY**

(g) "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.

(h) "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   (a) the Notice;
   (b) the Commitment to Issue Policy;
   (c) the Commitment Conditions;
   (d) Schedule A;
   (e) Schedule B, Part I—Requirements; and
   (f) Schedule B, Part II—Exceptions; and
   (g) a counter-signature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

5. **LIMITATIONS OF LIABILITY**
   (a) The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
      (i) comply with the Schedule B, Part I—Requirements;
      (ii) eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
      (iii) acquire the Title or create the Mortgage covered by this Commitment.
   (b) The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   (c) The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   (d) The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.
   (e) The Company shall not be liable for the content of the Transaction Identification Data, if any.
   (f) In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.
   (g) In any event, the Company's liability is limited by the terms and provisions of the Policy.

6. **LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT**
   (a) Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.
   (b) Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

**ALTA Commitment for Title Insurance 8-1-16**

AMERICAN
LAND TITLE
ASSOCIATION

 **CHICAGO TITLE INSURANCE COMPANY**

(c) Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

(d) The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

(e) Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

(f) When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

**7.    IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT**
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

**8.    PRO-FORMA POLICY**
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

Countersigned:

CHICAGO TITLE INSURANCE COMPANY

By _____
Michael J. Nolan
President

ATTEST: _____
Marjorie Nemzura
Secretary

_____
Hannah Crawford
New Castle Title of La Crosse, Inc.
750 3rd St N
Ste B
La Crosse, WI 54601

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

ALTA Commitment for Title Insurance 8-1-16



AMERICAN
LAND TITLE
ASSOCIATION



**CHICAGO TITLE INSURANCE COMPANY**

**EXHIBIT A**
**Property Description**

Issuing Office File No.:  23-WI-102537

Lot 9 of La Crosse County Certified Survey Map filed on July 11, 1979, in Volume 1 of Certified Survey Maps, Page 120, as Document No. 897908, being located on part of the NW 1/4 of the SE 1/4 of Section 35, Township 17 North, Range 7 West, Town of Hamilton, La Crosse County, Wisconsin.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**ALTA Commitment for Title Insurance 8-1-16**

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Page 10 of 10



# CHICAGO TITLE INSURANCE COMPANY

**Transaction Identification Data for reference only:**

Issuing Agent:              New Castle Title of La Crosse, Inc.
Issuing Office:             750 3rd St N, Ste B, La Crosse, WI 54601
ALTA® Universal ID:
Loan ID Number:
Issuing Office File Number: 23-WI-102537
Commitment Number:          23-WI-102537
Revision Number:
Property Address:           W5441 Innsbruck Road, West Salem, WI 54669

## SCHEDULE A

1. Commitment Date: 06/20/2023 at 8:00 AM

2. Policy to be issued:

    (a) ALTA Owner's Policy                    $395,000.00

       PROPOSED INSURED:    **Peter J. Gauchel and Brenda K. Gauchel**

3. The estate or interest in the Land described or referred to in this Commitment is: fee simple.

4. Title to the fee simple estate or interest in the Land is at the Commitment Date vested in:

    Jennifer Howe Sauls McKinney and Israel R. McKinney, wife and husband, debtors in possession under Case No. 1-22-11558-rmb, pending in the United States Bankruptcy Court for the Western District of the State of Wisconsin

5. The Land is described as follows:

    Property description set forth in "Exhibit A" attached hereto and made a part hereof.

    Tax Parcel No. 7-1354-1
    The 2022 taxes are in the amount of $5,619.69, with First Dollar Credit of $65.67 and Lottery Credit of $215.55, for net balance of $5,338.47, which is paid in full.

**New Castle Title of La Crosse, Inc. as authorized agent for CHICAGO TITLE INSURANCE COMPANY**

By: _____

    Hannah Crawford, License #: 20103100
    **Authorized Signatory**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Commonwealth Land Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

ALTA Commitment for Title Insuranc



AMERICAN
LAND TITLE
ASSOCIATION

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B, PART I
### Requirements

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. Payment of all taxes, assessments, levied and assessed against subject premises, which are due and payable.

6. Satisfactory evidence shall be produced that all improvements and/or repairs or alterations thereto are completed; that contractor, subcontractor, labor and materialmen are all paid in full.

7. Proper satisfaction of those matters shown in Schedule B, Section 2, if any.

8. Copy of properly executed Owner's Affidavit as to construction liens.

9. A petition for bankruptcy was filed in United States Bankruptcy Court for the Western District of the State of Wisconsin by Jennifer McKinney and Israel R. McKinney, Debtors, in Case No. 1-22-11558-rmb. The Company requires copies of the docket sheet, petition with schedules and other satisfactory final nonappealable orders, plans or documents in the bankruptcy proceedings authorizing the contemplated transaction. At the time the Company is furnished these items, the Company may make additional requirements or exceptions.

10. Deed executed from Jennifer Howe Sauls McKinney and Israel R. McKinney, debtors in possession in Case No. 1-22-11558-rmb, United States Bankruptcy Court, Western District, State of Wisconsin, to Peter J. Gauchel and Brenda K. Gauchel.

    The proposed Deed should either designate the subject premises as non-homestead, identify Grantor as single, or be joined in by the spouse and have their marital status typed thereon.

    The Company requires receipt of written consent by the Chapter 13 Trustee and the Bankruptcy Court to the proposed conveyance to be insured.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

ALTA Commitment for Title Insurance 8-1-16

AMERICAN
LAND TITLE
ASSOCIATION

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B, PART II
### Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attached, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

    NOTE:  Exception 1 of Schedule B-II will be removed only if a gap endorsement is attached to this commitment and the requirements for the issuance of gap coverage as described in the endorsement are met, including the payment of the premium.

2.  Special taxes or assessments, if any, payable with the taxes levied or to be levied for the current and subsequent years.

    NOTE: Exception 2 of Schedule B-II will be removed only if the Company receives written evidence from the municipality that there are no special assessments against the Land, or that all such items have been paid in full.

3.  Liens, hook-up charges or fees, deferred charges, reserve capacity assessments, impact fees, or other charges or fees due and payable on the development or improvement of the Land, whether assessed or charged before or after the Date of Policy.

    The company assures the priority of the lien of the insured mortgage over any such lien, charge or fee.

    NOTE: Exception 3 of Schedule B-II will be removed only if the Company receives (1) written evidence from the municipality that there are no deferred charges, hookup fees, or other fees or charges attaching to the property; (2) evidence that the Land contains a completed building; and (3) statement showing that the Land has a water and sewer use account. If the Land is vacant, this exception will not be removed.

4.  Any lien, or right to a lien, for services, labor, or material heretofore furnished, imposed by law and not shown by the public records.

    NOTE: Contact the Company for information on the deletion of this exception.

5.  Rights or claims of parties in possession not shown by the public records.

    NOTE: Exception 5 of Schedule B-II will be removed only if the Company receives a Construction Work and Tenants Affidavit on a form prepared by the Company. If the affidavit shows that there are tenants, Exception 5 will be replaced by an exception for the rights of the tenants disclosed by the Affidavit.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

---

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Page 6 of 10

ALTA Commitment for Title Insurance 8-1-16


AMERICAN
LAND TITLE
ASSOCIATION

# CHICAGO TITLE INSURANCE COMPANY

6. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

7. Easements or claims of easements not shown by the public records.

> NOTE: Exceptions 6, 7, and 8 of Schedule B-II will be removed only if the Company receives an original survey which (i) has a current date, (ii) is satisfactory to the Company, and (iii) complies with current ALTA/ACSM Minimum Survey Standards or Wisconsin Administrative Code Chapter AE-7 together with the certification agreed on between the Wisconsin Land Title Association and the Wisconsin Society of Land Surveyors on April 1, 1974. If the survey shows matters, which affect the title to the property, Exceptions 6, 7 and 8 will be replaced by exceptions describing those matters.

8. Any claim of adverse possession or prescriptive easement.

9. General taxes for the year 2023 and thereafter.

10. Rights of the public in any portion of the subject premises lying within the limits of public roads and public rights of way.

11. This commitment and our policy, when issued, should not be construed so as to insure the subject land contains any particular acreage.

12. There are no outstanding special assessments.

13. Covenants, conditions and restrictions contained in Quit Claim Deed dated July 7, 1955, and recorded on July 8, 1955, in Volume 243 of Deeds, Page 478, as Document No. 632162.

14. Easement to Trempealeau Electric Cooperative, its successors and assigns, dated August 17, 1976, and recorded on September 24, 1976, in Volume 580 of Records, Page 557, as Document No. 861926.

15. Covenants, conditions, easements, restrictions and charges or assessments contained in Declaration of Restrictions to "Innsbruck South", recorded on November 16, 1976, in Volume 582 of Records, Page 917, as Document No. 863699, which was affected by Certification dated November 19, 1984, and recorded on November 21, 1984, in Volume 726 of Records, Page 473, as Document No. 957279, which was amended by Amendment to Declaration of Restrictions to "Innsbruck South" dated January 1, 1987, and recorded on September 14, 1987, in Volume 802 of Records, Page 796, as Document No. 999850 and by Second Amendment to the Declaration of Restrictions to "Innsbruck South" and Declaration of Restrictions to "Innsbruck North" recorded on August 11, 1989, in Volume 849 of Records, Page 159, as Document No. 1026055, and by Amendment to Second Amendment to the Declaration of Restrictions to "Innsbruck South" and Declaration of Restrictions to "Innsbruck North" dated September 30, 1991, and recorded on September 14, 1994, in Volume 1062 of Records, Page 803, as Document No. 1122937, and by Amended Article XXVII to the Innsbruck Restrictive Covenants recorded on February 13, 2002, in Volume 1578 of Records, Page 156, as Document No. 1302972, which was affected by Correction to Amended Article XXVII to the Innsbruck Restrictive Covenants recorded on March 12, 2002, in Volume 1586 of Records, Page 856, as Document No. 1305340.

16. Covenants, conditions, provisions and restrictions contained in Articles of Trust dated November 15, 1976, and recorded on November 16, 1976, in Volume 582 of Records, Page 920, as Document No. 863700.

---

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

Copyright American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Page 7 of 10



 **CHICAGO TITLE INSURANCE COMPANY**

17. Restrictions, covenants, setbacks and easements as shown on Certified Survey Map filed July 11, 1979, in Volume 1 of Certified Survey Maps, Page 120, as Document No. 897908.

18. Easement to Trempealeau Electric Cooperative, its successors and assigns, dated October 10, 1979, and recorded on December 17, 1979, in Volume 638 of Records, Page 845, as Document No. 903442.

19. Covenants, conditions, provisions and restrictions contained in Articles of Trust dated July 13, 1989, and recorded on August 11, 1989, in Volume 849 of Records, Page 146, as Document No. 1026054.

20. Mortgage executed by Jennifer Howe Sauls McKinney and Israel R. McKinney, Husband and Wife to Marine Credit Union, dated November 23, 2013, and recorded on December 23, 2013, as Document No. 1633880, securing the principal sum of $318,750.00.

    Notice of Lis Pendens as it relates to Marine Credit Union, Plaintiff(s), vs. Jennifer Howe-Sauls McKinney, Israel R. McKinney, husband and wife, State of Wisconsin Department of Revenue of Revenue c/o Office of the Attorney General and Schneider Window Covering, Defendant(s), La Crosse County Circuit Court Case Number 2014CV000809, dated February 25, 2015, and recorded on March 2, 2015, as Document No. 1652557. (Attorneys Daniel Edward Dunn and Phillip James Addis).

21. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $92,067.73, plus costs, interest and additional taxes recorded on December 27, 2015, as Document No. 1667708.

22. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $47,942.41, plus costs, interest and additional taxes recorded on February 8, 2016, as Document No. 1669794.

23. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $56,910.06, plus costs, interest and additional taxes recorded on July 25, 2016, as Document No. 1678760.

24. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $582,913.65, plus costs, interest and additional taxes recorded on February 3, 2020, as Document No. 1740379.

25. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $143,266.21, plus costs, interest and additional taxes recorded on March 8, 2021, as Document No. 1767527.

26. Judgment filed against Israel McKinney and Jennifer H McKinney at the address of W5441 Insbruck Rd, West Salem, WI 54669, in favor of Schneider Window Covering, Case No. 2014SC000410, and docketed on March 21, 2014, in the principal sum of $3,261.23.

27. Judgment filed against Israel R McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of La Crosse County Clerk of Circuit Court, Case No. _____, and docketed on January 26, 2015, in the principal sum of $150.10.

28. Judgment filed against Israel R McKinney at the address of N9391 us Hwy 53 #25, Holmen, WI 54636, in favor of La Crosse County Clerk of Circuit Court, Case No. _____, and docketed on February 26, 2015, in the principal sum of $175.30.

29. Judgment filed against Israel McKinney and Jennifer McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of Gundersen Clinic LTD, Case No. 2015CV000523, and docketed on December 3, 2015, in the principal sum of $22,251.59.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Page 8 of 10

ALTA Commitment for Title Insurance 8-1-16



 **CHICAGO TITLE INSURANCE COMPANY**

30. Judgment filed against Israel McKinney and Jennifer McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of Gundersen Lutheran Medical Center, Case No. 2015CV000523, and docketed on December 3, 2015, in the principal sum of $20,622.98.

31. Child support lien filed against Jennifer H.S. McKinney, date of birth July 13, 1977, Docket No. 000750604, and docketed on March 5, 2023, in the principal sum of $1,449.00.

---

On May 25, 2022, an action for divorce was commenced in the Circuit Court for La Crosse County as Case No. 2022FA000153, naming Jennifer H. Sauls McKinney as Petitioner and Israel R. McKinney as Respondent. As of the effective date of this commitment, said divorce action is pending.

Bankruptcy proceedings commenced on September 27, 2022, in the United States Bankruptcy Court for the Western District of the State of Wisconsin, Case No. 1-22-11558-rmb, naming Jennifer McKinney and Israel R. McKinney as Debtors. (Attorney Greg P. Pittman)

---

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Page 9 of 10



# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B, PART II
### Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.  Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attached, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

    NOTE: Exception 1 of Schedule B-II will be removed only if a gap endorsement is attached to this commitment and the requirements for the issuance of gap coverage as described in the endorsement are met, including the payment of the premium.

2.  Special taxes or assessments, if any, payable with the taxes levied or to be levied for the current and subsequent years.

    NOTE: Exception 2 of Schedule B-II will be removed only if the Company receives written evidence from the municipality that there are no special assessments against the Land, or that all such items have been paid in full.

3.  Liens, hook-up charges or fees, deferred charges, reserve capacity assessments, impact fees, or other charges or fees due and payable on the development or improvement of the Land, whether assessed or charged before or after the Date of Policy.

    The company assures the priority of the lien of the insured mortgage over any such lien, charge or fee.

    NOTE: Exception 3 of Schedule B-II will be removed only if the Company receives (1) written evidence from the municipality that there are no deferred charges, hookup fees, or other fees or charges attaching to the property; (2) evidence that the Land contains a completed building; and (3) statement showing that the Land has a water and sewer use account. If the Land is vacant, this exception will not be removed.

4.  Any lien, or right to a lien, for services, labor, or material heretofore furnished, imposed by law and not shown by the public records.

    NOTE: Contact the Company for information on the deletion of this exception.

5.  Rights or claims of parties in possession not shown by the public records.

    NOTE: Exception 5 of Schedule B-II will be removed only if the Company receives a Construction Work and Tenants Affidavit on a form prepared by the Company. If the affidavit shows that there are tenants, Exception 5 will be replaced by an exception for the rights of the tenants disclosed by the Affidavit.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Page 6 of 10

AMERICAN LAND TITLE ASSOCIATION



Exhibit # 3

 **CHICAGO TITLE INSURANCE COMPANY**

6.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

7.  Easements or claims of easements not shown by the public records.

> NOTE: Exceptions 6, 7, and 8 of Schedule B-II will be removed only if the Company receives an original survey which (i) has a current date, (ii) is satisfactory to the Company, and (iii) complies with current ALTA/ACSM Minimum Survey Standards or Wisconsin Administrative Code Chapter AE-7 together with the certification agreed on between the Wisconsin Land Title Association and the Wisconsin Society of Land Surveyors on April 1, 1974.  If the survey shows matters, which affect the title to the property, Exceptions 6, 7 and 8 will be replaced by exceptions describing those matters.

8.  Any claim of adverse possession or prescriptive easement.

9.  General taxes for the year 2023 and thereafter.

10. Rights of the public in any portion of the subject premises lying within the limits of public roads and public rights of way.

11. This commitment and our policy, when issued, should not be construed so as to insure the subject land contains any particular acreage.

12. There are no outstanding special assessments.

13. Covenants, conditions and restrictions contained in Quit Claim Deed dated July 7, 1955, and recorded on July 8, 1955, in Volume 243 of Deeds, Page 478, as Document No. 632162.

14. Easement to Trempealeau Electric Cooperative, its successors and assigns, dated August 17, 1976, and recorded on September 24, 1976, in Volume 580 of Records, Page 557, as Document No. 861926.

15. Covenants, conditions, easements, restrictions and charges or assessments contained in Declaration of Restrictions to "Innsbruck South", recorded on November 16, 1976, in Volume 582 of Records, Page 917, as Document No. 863699, which was affected by Certification dated November 19, 1984, and recorded on November 21, 1984, in Volume 726 of Records, Page 473, as Document No. 957279, which was amended by Amendment to Declaration of Restrictions to "Innsbruck South" dated January 1, 1987, and recorded on September 14, 1987, in Volume 802 of Records, Page 796, as Document No. 999850 and by Second Amendment to the Declaration of Restrictions to "Innsbruck South" and Declaration of Restrictions to "Innsbruck North" recorded on August 11, 1989, in Volume 849 of Records, Page 159, as Document No. 1026055, and by Amendment to Second Amendment to the Declaration of Restrictions to "Innsbruck South" and Declaration of Restrictions to "Innsbruck North" dated September 30, 1991, and recorded on September 14, 1994, in Volume 1062 of Records, Page 803, as Document No. 1122937, and by Amended Article XXVII to the Innsbruck Restrictive Covenants recorded on February 13, 2002, in Volume 1578 of Records, Page 156, as Document No. 1302972, which was affected by Correction to Amended Article XXVII to the Innsbruck Restrictive Covenants recorded on March 12, 2002, in Volume 1586 of Records, Page 856, as Document No. 1305340.

16. Covenants, conditions, provisions and restrictions contained in Articles of Trust dated November 15, 1976, and recorded on November 16, 1976, in Volume 582 of Records, Page 920, as Document No. 863700.

---

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

---

ALTA Commitment for Title Insurance 8-1-16

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Page 7 of 10



 **CHICAGO TITLE INSURANCE COMPANY**

17. Restrictions, covenants, setbacks and easements as shown on Certified Survey Map filed July 11, 1979, in Volume 1 of Certified Survey Maps, Page 120, as Document No. 897908.

18. Easement to Trempealeau Electric Cooperative, its successors and assigns, dated October 10, 1979, and recorded on December 17, 1979, in Volume 638 of Records, Page 845, as Document No. 903442.

19. Covenants, conditions, provisions and restrictions contained in Articles of Trust dated July 13, 1989, and recorded on August 11, 1989, in Volume 849 of Records, Page 146, as Document No. 1026054.

20. Mortgage executed by Jennifer Howe Sauls McKinney and Israel R. McKinney, Husband and Wife to Marine Credit Union, dated November 23, 2013, and recorded on December 23, 2013, as Document No. 1633880, securing the principal sum of $318,750.00.

   Notice of Lis Pendens as it relates to Marine Credit Union, Plaintiff(s), vs. Jennifer Howe-Sauls McKinney, Israel R. McKinney, husband and wife, State of Wisconsin Department of Revenue of Revenue c/o Office of the Attorney General and Schneider Window Covering, Defendant(s), La Crosse County Circuit Court Case Number 2014CV000809, dated February 25, 2015, and recorded on March 2, 2015, as Document No. 1652557. (Attorneys Daniel Edward Dunn and Phillip James Addis).

21. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $92,067.73, plus costs, interest and additional taxes recorded on December 27, 2015, as Document No. 1667708.

22. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $47,942.41, plus costs, interest and additional taxes recorded on February 8, 2016, as Document No. 1669794.

23. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $56,910.06, plus costs, interest and additional taxes recorded on July 25, 2016, as Document No. 1678760.

24. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $582,913.65, plus costs, interest and additional taxes recorded on February 3, 2020, as Document No. 1740379.

25. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $143,266.21, plus costs, interest and additional taxes recorded on March 8, 2021, as Document No. 1767527.

26. Judgment filed against Israel McKinney and Jennifer H McKinney at the address of W5441 Insbruck Rd, West Salem, WI 54669, in favor of Schneider Window Covering, Case No. 2014SC000410, and docketed on March 21, 2014, in the principal sum of $3,261.23.

27. Judgment filed against Israel R McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of La Crosse County Clerk of Circuit Court, Case No. _____, and docketed on January 26, 2015, in the principal sum of $150.10.

28. Judgment filed against Israel R McKinney at the address of N9391 us Hwy 53 #25, Holmen, WI 54636, in favor of La Crosse County Clerk of Circuit Court, Case No. _____, and docketed on February 26, 2015, in the principal sum of $175.30.

29. Judgment filed against Israel McKinney and Jennifer McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of Gundersen Clinic LTD, Case No. 2015CV000523, and docketed on December 3, 2015, in the principal sum of $22,251.59.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

Copyright American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

 **CHICAGO TITLE INSURANCE COMPANY**

30. Judgment filed against Israel McKinney and Jennifer McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of Gundersen Lutheran Medical Center, Case No. 2015CV000523, and docketed on December 3, 2015, in the principal sum of $20,622.98.

31. Child support lien filed against Jennifer H.S. McKinney, date of birth July 13, 1977, Docket No. 000750604, and docketed on March 5, 2023, in the principal sum of $1,449.00.

---

On May 25, 2022, an action for divorce was commenced in the Circuit Court for La Crosse County as Case No. 2022FA000153, naming Jennifer H. Sauls McKinney as Petitioner and Israel R. McKinney as Respondent. As of the effective date of this commitment, said divorce action is pending.

Bankruptcy proceedings commenced on September 27, 2022, in the United States Bankruptcy Court for the Western District of the State of Wisconsin, Case No. 1-22-11558-rmb, naming Jennifer McKinney and Israel R. McKinney as Debtors. (Attorney Greg P. Pittman)

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Page 9 of 10

AMERICAN
LAND TITLE
ASSOCIATION

**UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF WISCONSIN**

---

In Re:                                              In Bankruptcy No:

**ISRAEL MCKINNEY and
JENNIFER MCKINNEY**

**Debtors.**                                    Case No:  **22-11558**

---

**NOTICE OF MOTION TO SELL CERTAIN REAL ESTATE FREE AND CLEAR OF ALL LIENS
PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b)**

---

**PLEASE TAKE NOTICE,** that the Debtors, Israel and Jennifer McKinney, by their attorneys PITTMAN & PITTMAN LAW OFFICES, LLC by Greg P. Pittman, have filed a Motion to Sell Certain Real Estate Free and Clear of All Liens.   A copy of said Motion is attached thereto.

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to approve said motion, or if you want the Court to consider your views on the motion, then on or before ***July 18, 2023,*** you or your attorney must file with the Court, in writing, your position in said matter and request a hearing and file your original document with the ***United States Bankruptcy Court, 120 N. Henry Street, RM 340, Madison, WI 53703-2559,*** and a copy to ***Attorney Greg P. Pittman, PITTMAN & PITTMAN LAW OFFICES, LLC, 712 Main Street, La Crosse, Wisconsin  54601.***  If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought by the motion and may enter an order granting that relief.

Dated this _____27th_____ day of June, 2023, at La Crosse, Wisconsin.

PITTMAN & PITTMAN LAW OFFICES, LLC

By:  s/Greg P. Pittman_____
     **Greg P. Pittman**
     **Attorney No:  1073787**
     **Attorney for Debtors**
     **712 Main Street**
     **La Crosse, WI  54601**
     **(608) 784-0841**

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **In Re:** | **In Bankruptcy No:** |
| **ISRAEL MCKINNEY and JENNIFER MCKINNEY** | |
| **Debtors.** | **Case No: 22-11558** |

### AFFIDAVIT OF SERVICE BY MAIL

| | |
|---|---|
| **STATE OF WISCONSIN** | ) |
| | ) SS |
| **COUNTY OF LA CROSSE** | ) |

      The undersigned being first duly sworn states that a true copy of ***Motion to Sell Certain Real Estate and Notice of Motion*** was served upon the individuals/entities below and on the attached list either by electronic filing or by enclosing the same in an envelope postpaid for first class handling which bore the sender's name and return address and addressed to each such individual at their respective post office addresses and deposited in a U.S. Post Office depository in La Crosse, Wisconsin on June __27____, 2023.

| | |
|---|---|
| Schneider Window Coverings<br>505 Brickl Rd<br>West Salem, WI 54669 | La Crosse County Child Support<br>333 Vine Street, Room 1703<br>La Crosse, WI, 54601 |
| La Crosse County Clerk of Courts<br>333 Vine Street<br>La Crosse, WI 54601 | |

 

**s/Wanda Nickelotti**
**Wanda Nickelotti**

 

**Subscribed and sworn to before me**
**this __27th____ day of June, 2023.**

**s/Greg P. Pittman**
**Greg P. Pittman, Notary Public**
**My Commission is Permanent.**

Label Matrix for local noticing
0758-1
Case 1-22-11558-rmb
Western District of Wisconsin www.wiwb.uscour
Eau Claire
Thu Apr 13 15:12:20 CDT 2023

American Accounts & Advisers
Attn: Bankruptcy
Po Box 250
Cottage Grove, MN 55016-0250

(p)AMERICOLLECT INC
PO BOX 2080
MANITOWOC WI 54221-2080

Theresa M. Anzivino
U.S. Department of Justice
222 West Washington Avenue
Suite 700
Madison, WI 53703-2775

Nathan Baney
DOJ-Tax
Civil Trial Section, Central Region
P.O. Box 7238
Washington, DC 20044-7238

Bonneville Collections
Po Box 150621
Ogden, UT 84415-0621

Credit Bureau Data Inc
Attn: Bankruptcy
518 State Street Po Box 2288
La Crosse, WI 54602-2288

Credit Collection Services
Attn: Bankruptcy
725 Canton St
Norwood, MA 02062-2679

Department of Treasury - Internal Revenue Se
PO Box 7346
Philadelphia, PA 19101-7346

Enhanced Recovery Company
Attn: Bankruptcy
8014 Bayberry Road
Jacksonville, FL 32256-7412

Gundersen Health System
1900 South Ave.
La Crosse, WI 54601-5496

Mark Harring
122 West Washington Ave.
Suite 500
Madison, WI 53703-2758

IRS - Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

(p)US ATTORNEY'S OFFICE WESTERN DISTRICT OF W
ATTN ESA ANZIVINO
222 WEST WASHINGTON AVENUE
SUITE 700
MADISON WI 53703-2775

Sam E. Kaufman
Vande Zande & Kaufman, LLP
408 E. Main Street
PO Box 430
Waupun, WI 53963-0430

Marine Credit Union
Attn: Collections Dept
P.O. Box 309
Onalaska, WI 54650-0309

Marine Cu
Attn: Bankruptcy
Po Box 309
Onalaska, WI 54650-0309

Israel R. McKinney
W5441 Innsbruck Rd
West Salem, WI 54669-9316

Jennifer McKinney
429 S. 2nd St. N. #322
West Salem, WI 54601

(p)NATIONAL SERVICE BUREAU
18912 NORTH CREEK PARKWAY
SUITE 205
BOTHELL WA 98011-8016

Greg P. Pittman
Pittman & Pittman Law Offices, LLC
712 Main Street
La Crosse, WI 54601-4121

SOUTHEASTERN EMERGENCY PHYSICIANS, LLC
c/o Wakefield & Associates, LLC
PO Box 51272
Knoxville, TN 37950-1272

Secretary of Treasury
Treasury Department
1500 Pennsylvania Avenue N.W.
Washington, DC 20220-0001

Securities and Exchange Commission
175 West Jackson Boulevard
Suite 900
Chicago, IL 60604-2908

U.S. Trustee's Office
780 Regent Street, Suite 304
Madison, WI 53715-2635

VISTA RADIOLOGY PC
c/o Wakefield & Associates, LLC
PO Box 51272
Knoxville, TN 37950-1272

(p)WAKEFIELD & ASSOCIATES
PO BOX 51272
KNOXVILLE TN 37950-1272

Wisconsin Department of Revenue
Special Procedures Unit
P.O. Box 8901
Madison, WI 53708-8901

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Americollect, Inc.
PO Box 1566
Manitowoc, WI 54221

Internal Revenue Service
United States Attorney's Office
222 West Washington Avenue, Suite 700
Madison, WI 53703

National Service Bureau, Inc
18912 North Creek Parkway
Suite 205
Bothwell, WA 98011

Wakefield & Associates
Attn: Bankruptcy
7005 Middlebrook Pike
Knoxville, TN 37909

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Wisconsin Dept. of Revenue
Special Procedures Unit - PO Box 8901
Madison, WI 53708-8901

| End of Label Matrix | |
| --- | --- |
| Mailable recipients | 27 |
| Bypassed recipients | 1 |
| Total | 28 |