UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF WISCONSIN

**In Re:**

**ISRAEL MCKINNEY and**
**JENNIFER MCKINNEY**

Debtors.

**In Bankruptcy No:**

Case No: 22-11558 (Chapter 13)(RMB)

**ORDER RELEASING AND REMOVING VARIOUS LIENS, TAX LIENS, JUDGMENT LIENS, MORTGAGES, LIS PENDENS AND OTHER CLAIMS AGAINST CERTAIN PROPERTY OWNED BY THE ABOVE-NAMED ENTITY TO ALLOW THE SALE OF REAL ESTATE FREE AND CLEAR OF ALL LIENS PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE**

The above-named matter having come on before the Court pursuant to a Motion for the sale of real estate, pursuant to section 363(b) of the Bankruptcy Code free and clear of liens and the Notice of Motion, Motion were all attached and served on all parties as set forth in the Affidavit of Mailing in the said Chapter 13 Proceedings and no Objections having been filed by any creditor or any other person of interest and based upon all the papers and records on file, and upon Motion of Greg P. Pittman, attorney for the debtors,

**IT IS ORDERED AS FOLLOWS:**

1

1. The sale and transfer of the real estate as set forth in the Offer to Purchase and other documents in the Motion are approved in full. The real estate is described in Exhibit #2 (Attached to the Order).

2. The liens, claims, judgments, mortgages, chattel mortgages, land contracts, lis pendens, taxes, and other claims of whatsoever nature against the property that are set forth in Exhibit #3 (attached to this Order) are hereby removed, released and terminated from the property as set forth in Exhibit #2 to allow the sale and transfer of the said property free and clear of all liens.

3. The proceeds from the sale of real estate shall be distributed as follows:

    a. Closing costs relating to the sale of property including title policy, transfer fees, recording fees, real estate commissions, surveying costs (if necessary), attorneys fees and disbursements for Greg P. Pittman not to exceed $2,000.00 relating to the sale of the property or any other miscellaneous closing costs to complete the transaction.

    b. Payment of any and all delinquent or accrued real estate taxes are not covered by the buyer in the Offer to Purchase.

    c. The remaining funds shall be paid in the order of priority liens against the property. Marine Credit Union holds the first mortgage on the real estate and Marine Credit Union will be paid in full directly from the closing.

        d.        The remaining balance of funds of whatsoever nature shall be paid to the Internal Revenue Service for the tax liens against the property.

4.        Federal Rule of Bankruptcy Procedure 6004(h) is hereby waived so that the Order approving the sale is final and not subject to a 14 day stay so that the debtors are not subject to any additional interest accrual, real estate tax accrual and the potential for more bank fees.

###

2. Real Estate Description

Lot 9 of La Crosse County Certified Survey Map filed on July 11, 1979, in Volume 1 of Certified Survey Maps, Page 120, as Document No. 897908, being located on part of the NW ¼ of the SE ¼ of Section 35, Township 17 North, Range 7 West, Town of Hamilton, La Crosse County, Wisconsin.
(Tax Parcel #7-1354-1)



EXHIBIT # 2

# CHICAGO TITLE INSURANCE COMPANY

## SCHEDULE B, PART II
### Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attached, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

   NOTE: Exception 1 of Schedule B-II will be removed only if a gap endorsement is attached to this commitment and the requirements for the issuance of gap coverage as described in the endorsement are met, including the payment of the premium.

2. Special taxes or assessments, if any, payable with the taxes levied or to be levied for the current and subsequent years.

   NOTE: Exception 2 of Schedule B-II will be removed only if the Company receives written evidence from the municipality that there are no special assessments against the Land, or that all such items have been paid in full.

3. Liens, hook-up charges or fees, deferred charges, reserve capacity assessments, impact fees, or other charges or fees due and payable on the development or improvement of the Land, whether assessed or charged before or after the Date of Policy.

   The company assures the priority of the lien of the insured mortgage over any such lien, charge or fee.

   NOTE: Exception 3 of Schedule B-II will be removed only if the Company receives (1) written evidence from the municipality that there are no deferred charges, hookup fees, or other fees or charges attaching to the property; (2) evidence that the Land contains a completed building; and (3) statement showing that the Land has a water and sewer use account. If the Land is vacant, this exception will not be removed.

4. Any lien, or right to a lien, for services, labor, or material heretofore furnished, imposed by law and not shown by the public records.

   NOTE: Contact the Company for information on the deletion of this exception.

5. Rights or claims of parties in possession not shown by the public records.

   NOTE: Exception 5 of Schedule B-II will be removed only if the Company receives a Construction Work and Tenants Affidavit on a form prepared by the Company. If the affidavit shows that there are tenants, Exception 5 will be replaced by an exception for the rights of the tenants disclosed by the Affidavit.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

Copyright American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Page 6 of 10





EXHIBIT 3

 **CHICAGO TITLE INSURANCE COMPANY**

6. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

7. Easements or claims of easements not shown by the public records.

    NOTE: Exceptions 6, 7, and 8 of Schedule B-II will be removed only if the Company receives an original survey which (i) has a current date, (ii) is satisfactory to the Company, and (iii) complies with current ALTA/ACSM Minimum Survey Standards or Wisconsin Administrative Code Chapter AE-7 together with the certification agreed on between the Wisconsin Land Title Association and the Wisconsin Society of Land Surveyors on April 1, 1974. If the survey shows matters, which affect the title to the property, Exceptions 6, 7 and 8 will be replaced by exceptions describing those matters.

8. Any claim of adverse possession or prescriptive easement.

9. General taxes for the year 2023 and thereafter.

10. Rights of the public in any portion of the subject premises lying within the limits of public roads and public rights of way.

11. This commitment and our policy, when issued, should not be construed so as to insure the subject land contains any particular acreage.

12. There are no outstanding special assessments.

13. Covenants, conditions and restrictions contained in Quit Claim Deed dated July 7, 1955, and recorded on July 8, 1955, in Volume 243 of Deeds, Page 478, as Document No. 632162.

14. Easement to Trempealeau Electric Cooperative, its successors and assigns, dated August 17, 1976, and recorded on September 24, 1976, in Volume 580 of Records, Page 557, as Document No. 861926.

15. Covenants, conditions, easements, restrictions and charges or assessments contained in Declaration of Restrictions to "Innsbruck South", recorded on November 16, 1976, in Volume 582 of Records, Page 917, as Document No. 863699, which was affected by Certification dated November 19, 1984, and recorded on November 21, 1984, in Volume 726 of Records, Page 473, as Document No. 957279, which was amended by Amendment to Declaration of Restrictions to "Innsbruck South" dated January 1, 1987, and recorded on September 14, 1987, in Volume 802 of Records, Page 796, as Document No. 999850 and by Second Amendment to the Declaration of Restrictions to "Innsbruck South" and Declaration of Restrictions to "Innsbruck North" recorded on August 11, 1989, in Volume 849 of Records, Page 159, as Document No. 1026055, and by Amendment to Second Amendment to the Declaration of Restrictions to "Innsbruck South" and Declaration of Restrictions to "Innsbruck North" dated September 30, 1991, and recorded on September 14, 1994, in Volume 1062 of Records, Page 803, as Document No. 1122937, and by Amended Article XXVII to the Innsbruck Restrictive Covenants recorded on February 13, 2002, in Volume 1578 of Records, Page 156, as Document No. 1302972, which was affected by Correction to Amended Article XXVII to the Innsbruck Restrictive Covenants recorded on March 12, 2002, in Volume 1586 of Records, Page 856, as Document No. 1305340.

16. Covenants, conditions, provisions and restrictions contained in Articles of Trust dated November 15, 1976, and recorded on November 16, 1976, in Volume 582 of Records, Page 920, as Document No. 863700.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

Copyright American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Page 7 of 10



 **CHICAGO TITLE INSURANCE COMPANY**

17. Restrictions, covenants, setbacks and easements as shown on Certified Survey Map filed July 11, 1979, in Volume 1 of Certified Survey Maps, Page 120, as Document No. 897908.

18. Easement to Trempealeau Electric Cooperative, its successors and assigns, dated October 10, 1979, and recorded on December 17, 1979, in Volume 638 of Records, Page 845, as Document No. 903442.

19. Covenants, conditions, provisions and restrictions contained in Articles of Trust dated July 13, 1989, and recorded on August 11, 1989, in Volume 849 of Records, Page 146, as Document No. 1026054.

20. Mortgage executed by Jennifer Howe Sauls McKinney and Israel R. McKinney, Husband and Wife to Marine Credit Union, dated November 23, 2013, and recorded on December 23, 2013, as Document No. 1633880, securing the principal sum of $318,750.00.

    Notice of Lis Pendens as it relates to Marine Credit Union, Plaintiff(s), vs. Jennifer Howe-Sauls McKinney, Israel R. McKinney, husband and wife, State of Wisconsin Department of Revenue of Revenue c/o Office of the Attorney General and Schneider Window Covering, Defendant(s), La Crosse County Circuit Court Case Number 2014CV000809, dated February 25, 2015, and recorded on March 2, 2015, as Document No. 1652557. (Attorneys Daniel Edward Dunn and Phillip James Addis).

21. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $92,067.73, plus costs, interest and additional taxes recorded on December 27, 2015, as Document No. 1667708.

22. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $47,942.41, plus costs, interest and additional taxes recorded on February 8, 2016, as Document No. 1669794.

23. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $56,910.06, plus costs, interest and additional taxes recorded on July 25, 2016, as Document No. 1678760.

24. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $582,913.65, plus costs, interest and additional taxes recorded on February 3, 2020, as Document No. 1740379.

25. Notice of Federal Tax Lien against Israel R & Jennifer H McKinney in the amount of $143,266.21, plus costs, interest and additional taxes recorded on March 8, 2021, as Document No. 1767527.

26. Judgment filed against Israel McKinney and Jennifer H McKinney at the address of W5441 Insbruck Rd, West Salem, WI 54669, in favor of Schneider Window Covering, Case No. 2014SC000410, and docketed on March 21, 2014, in the principal sum of $3,261.23.

27. Judgment filed against Israel R McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of La Crosse County Clerk of Circuit Court, Case No. _____, and docketed on January 26, 2015, in the principal sum of $150.10.

28. Judgment filed against Israel R McKinney at the address of N9391 us Hwy 53 #25, Holmen, WI 54636, in favor of La Crosse County Clerk of Circuit Court, Case No. _____, and docketed on February 26, 2015, in the principal sum of $175.30.

29. Judgment filed against Israel McKinney and Jennifer McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of Gundersen Clinic LTD, Case No. 2015CV000523, and docketed on December 3, 2015, in the principal sum of $22,251.59.

---

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
Page 8 of 10



 CHICAGO TITLE INSURANCE COMPANY

30. Judgment filed against Israel McKinney and Jennifer McKinney at the address of W5441 Innsbruck Rd, West Salem, WI 54669, in favor of Gundersen Lutheran Medical Center, Case No. 2015CV000523, and docketed on December 3, 2015, in the principal sum of $20,622.98.

31. Child support lien filed against Jennifer H.S. McKinney, date of birth July 13, 1977, Docket No. 000750604, and docketed on March 5, 2023, in the principal sum of $1,449.00.

---

On May 25, 2022, an action for divorce was commenced in the Circuit Court for La Crosse County as Case No. 2022FA000153, naming Jennifer H. Sauls McKinney as Petitioner and Israel R. McKinney as Respondent. As of the effective date of this commitment, said divorce action is pending.

Bankruptcy proceedings commenced on September 27, 2022, in the United States Bankruptcy Court for the Western District of the State of Wisconsin, Case No. 1-22-11558-rmb, naming Jennifer McKinney and Israel R. McKinney as Debtors. (Attorney Greg P. Pittman)

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance 8-1-16

**Copyright American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.
Page 9 of 10